[No. 9,102. In Bank.—December 11, 1884.]

# HARRIET TRUETT, APPELLANT, v. EDSON ADAMS, RESPONDENT.

GRANT—DESCRIPTION BY GENERAL NAME—EXCEPTION FROM GRANT.—Where a tract of land is known and designated by a general name, a grant describing the land by such name passes the entire tract. And on the same principle, where a grant by metes and bounds excepts from the operation thereof a tract designated by a general name by which it is known, the tract so designated does not pass by the grant.

ID.—DOUBTFUL DESCRIPTION—INTERPRETATION.—In construing a doubtful description in a grant, the court must assume as nearly as possible the position of the contracting parties, and consider the circumstances of the transaction between them, and then read and interpret the words used in the light of those circumstances.

ID.—ACTS AND DECLARATIONS OF THE PARTIES—EVIDENCE.—Neither the acts nor declarations of the parties are admissible to show their understanding of the description, when the location of the premises intended to be conveyed can be ascertained from the terms used in the instrument of conveyance. But when the terms used are equivocal, ambiguous or insufficient, the subsequent acts of the parties while in interest may be resorted to for the purpose of ascertaining their intention ; and where it is shown that a line has been agreed upon, either expressly or by long acquiescence, as the dividing line between two tracts of land, courts will not disturb the line.

APPEAL from a judgment of the Superior Court of Alameda county, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

L. E. Bulkeley, for Appellant.

H. P. Irving, Stanly, Stoney & Hayes, and H. S. Brown, for Respondent.

McKEE, J.—This was an action to recover an undivided interest in a block of land situate within the city of Oakland, and embraced within what has been heretofore known as the " Encinal, or Ensinar, of Temescal."

To the original owners of the land, the Encinal of Temescal was well-known as a tract of land bounded on the east by the estuary of San Antonio, on the south by said estuary and the Bay of San Francisco, on the west by the Bay of San Francisco, and having for its northern boundary a straight line running from the estuary of San Antonio to the Bay of San Francisco ; and, as known by these boundaries and that name, it formed part

of the Temescal ranch, of which it is admitted Vicente Peralta was in the years 1851 and 1852 the owner and in possession.

From Peralta the plaintiff claims to have acquired title to the premises in dispute, by, through, and under a deed from R. P. Hammond, to whom and others Peralta, on the 3d day of August, 1853, granted a portion of the Temescal ranch by boundaries which would have included the Encinal of Temescal; but in the descriptive clause of the grant there is the following exception, viz: "Excepting therefrom all the land comprehended in the Encinal of Temescal sold on the 13th of March, 1852, to John Caperton and others."

It is well settled that the grant of a tract of land with well known boundaries, designated and known by a general name, passes all the land within the tract so named and designated; and upon the same principle, where, in the grant of a tract of land by metes and bounds, there is excepted therefrom a portion of the tract with well known boundaries, designated by a general name by which it is known, the tract so designated does not pass by the grant.

It would therefore seem that Peralta, by his grant to Hammond, intended to, and did in fact, except from the operation of the grant the entire Encinal, either for those to whom he declared he had previously sold it, or for himself; and, whether for them or himself, no part of the land " comprehended in the Encinal" passed to Hammond. So that the plaintiff, who claims only as the grantee of Hammond, acquired whatever right Hammond had to land outside the Encinal tract; and as it is only by virtue of that right that she claimed title to the land in controversy, it was incumbent on her, in order to recover, to show that the land was not a part of the Encinal tract. (*City of San Jose* v. *Uridias*, 37 Cal. 339.) She, however, admitted it was within the Encinal, and therefore within the exception of her grantor's deed, if the description in the deed embraced the Encinal.

But the plaintiff's contention is that Peralta sold to Caperton and others only a portion of the Encinal, and that the land in controversy, although within the Encinal, was without the portion of it which Peralta sold, and therefore not within the exception of the Hammond deed.

The court below, however, found as a fact that on the 13th

of March, 1852, Peralta sold and conveyed the whole of the Encinal to Caperton and others. This finding is challenged, as contrary to the evidence in the case. The evidence upon which the finding rests consisted of the contract of sale between the original parties, of date the 13th of October, 1851, and of the deed executed and delivered on the 13th of March, 1852, in fulfillment of the contract, and of parol testimony of the acts and conduct of the vendor and grantor, and the vendees and grantees, under the contract and deed, in connection with the claim of ownership and use of the Encinal. The contract and deed are both in the Spanish language. The deed, after reciting the fact that it was executed in fulfillment of the contract, designates the land conveyed as " *Una porcion del terreno llamada El Encinal descrito en dicho contrato*"; that is to say, in English : A portion of my land called " Ensinar," which is described in said contract. The contract describes the land thus : " *la parte de mi rancho llamada Ensinar comprendiar desde la punta de la primera laguna que esta cerca de la casa de Valdes, linea recta, a la orilla y punta primera del canal donde estan los alemanes actualmente ; esto es todo el torreno desde esta linea al sur y donde quedan plantados hoy mismo dos estacas,*" that is to say, in English : The portion of my ranch called Ensinar, which is comprised from the point of the first lake, which is near the house of Valdez, in a direct line to the edge and first point of the canal where the Germans actually are ; that is, all the land from this line—" *al sur* "—to the south, and up to where are planted this day two stakes.

The first expression in this description shows that on that occasion Peralta sold that part of his ranch known by the name of Ensinar, and situated to the south of a line which he undertook to locate. For that purpose, as it was a peninsular tract of land, well known by the name by which he designated it, bounded on the southeast by the waters of the estuary of San Antonio, on the south by the waters of the same estuary, and on the west by the bay of San Francisco, it was only necessary to describe the line on the north, extending from the estuary on the east to the bay on the west, which separated the Encinal from the main land of the ranch. For that purpose, the vendor used the natural objects of a lake near the house of Valdez to the east, and a canal to the west, near where some Germans were located.

The idiomatic forms of expression used by Peralta in describing that line on the north, and the land which he sold to the south of it, are not free from ambiguity.   It is doubtful whether by them he intended to sell merely the land directly to the south of a straight line produced west from the point of the lake, near the house of Valdez, to a point where it touched the slough near the house of the Germans, or all the land to the south of such a line, and from the west stake across the salt marsh to the waters of the bay, and from the east stake across any intervening marsh lands between it and the estuary ; and as the language of the contract is doubtful, we must construe it so as to ascertain the intention of the parties to the contract. for that is the object of all the rules of construction.   In trying to ascertain that intention, it is the duty of a court to assume, as nearly as possible, the position of the contracting parties, and to question the circumstances of the transaction between them, and then to read and interpret the words which they used in the light of those circumstances.

Now, the evidence shows that the subject matter of negotiations between the contracting parties was the peninsular tract of land called the Encinal, or Oak Grove of Temescal.   The owner and the proposed vendee rode around it preliminarily to its purchase, and the former pointed out to the latter the locality of the line on the north, which divided the peninsula from the mainland ; and that was understood by both parties to be a line from the headwaters of the estuary on the east, extended west to the waters of the bay of San Francisco.   With that understanding, a line was to be drawn across the solid ground of the neck of the peninsula in connection with and from the first point of the lake, near the house of Valdez on the east, and to the first point of the tide slough on the west, and two stakes were to be planted where the line intersected the salt marsh on either side to the west and east.   One stake was planted at the point where the line intersected the salt marsh on the west.   From that point the salt marsh extended west 29.50 chains to the bay ; the other was planted at the point of the lake to the east, between which and the waters of the estuary there was a distance of about fourteen hundred feet, with intervening parcels of salt marsh.   When the stakes were driven,

the vendor declared he sold all the land to the south of the line, from the lake to the canal, and where were planted the two stakes.  To the south lay the Encinal, bounded on its three sides by the waters of the estuary on the southeast, by the same waters on the south, and by the waters of the bay of San Francisco on the southwest.  Was not that the land which was sold?

It is observable that no attempt was made to describe any of the boundaries of the Encinal, except the boundary line on the north ; and as the Encinal was a peninsular tract of land, the terms used to represent this line must have been intended to mark the neck of the peninsula.  From this neck, no lines were drawn or called for, running directly south from the natural objects of the lake and canal, or from the stakes, to the southern boundary ; and no terms were used from which it could be inferred that the vendor and grantor intended to limit the land sold to a specific portion of the Encinal.  On the contrary, the expression used is " all the land to the south of the line drawn from the lake to the canal, and where two stakes are planted." Evidently these words were not used definitely with the directions of the compass ; they must therefore be construed as referring to the whole of the land within the natural boundaries of the Encinal, whether it lay to the southeast, the south, or the southwest of the established line to the north.

And  this construction  coincides with the construction given to the instruments by the acts and conduct of Peralta and his grantees, under both the Caperton and Hammond deeds, and the manner in which those parties exercised their respective rights under their deeds for nearly a quarter of a century. During that time, all parties claiming under those deeds have acquiesced in the location of the north line from the estuary by the first point of the lake to the first point of the canal, and on through the salt marsh to the bay, as the true division line between the Encinal and the Temescal ranch.

It is objected that parol evidence was not admissible to prove acquiescence in the establishment of that as the north line, or the acts and declarations of the parties to the contract and deed, as to their understanding of the description of any of the boundaries of the land.  Undoubtedly, where the location of prem•

ises intended to be conveyed can be ascertained from the terms used in the instrument of conveyance, neither the acts nor declarations of the parties are admissible to show their understanding of the description contained in the conveyance. But where the terms used to describe the premises meant to be conveyed are equivocal, ambiguous, or insufficient, the subsequeut acts of the parties while in interest, showing the practical construction put upon the terms of the description by them, may be resorted to for the purpose of ascertaining their intention. (*Mulford* v. *Le Franc*, 26 Cal. 88.) In *Stone* v. *Clark*, 1 Met. 378, the rule is thus stated: "When the construction of a deed is doubtful, great weight is to be given to the construction put upon it by the parties, especially in doubtful questions of boundaries, which must be presumed within their knowledge." And where it is proved that a line has been agreed upon, either expressly or by long acquiescence, as the dividing line between two tracts of land, courts will not disturb the line. (*McCormick* v. *Barnum*, 10 Wend. 104; *Sneed* v. *Osborne*, 25 Cal. 619.)

The findings of the court below were sustained by the evidence; and as no prejudicial errors appear in the record, the judgment and order are affirmed.

MYRICK, J., SHARPSTEIN, J., and THORNTON, J., concurred.

McKINSTRY, J., concurred in the judgment.

ROSS, J., concurring.—I concur in the judgment, on the ground that the block of land in controversy is included within the tract of land sold by Peralta on the 13th of March, 1852, to John Caperton and others, and therefore falls within the exception contained in the deed under which the plaintiff claims.

Rehearing denied.