# MARY R. MASON v. BENT E. HORTON.

## October Term, 1894.

*Easements and servitudes.  When they pass upon distribution among heirs.  Non-user.  Adverse user.*

1. When real estate is so employed by the owner that the use of one parcel creates an easement in that parcel and a servitude upon another, that condition will inhere upon distribution among heirs, and the right will pass to the one taking the dominant parcel as by an implied grant.

2. An easement by grant is not lost through mere non-user. To work that result, the conduct of the owner of the dominant estate must be such as to plainly indicate an intention to abandon the easement, and this must have been acted upon by the owner of the servient estate so as to make its revival inequitable as against him.

3. The defendant's mill privilege took the water at a point above the plaintiff's dam, and discharged it into the river at a point below so that the plaintiff's privilege lost the benefit of it.  *Held*, that the mere non-user of the defendant's privilege for more than fifteen years did not work a forfeiture of this right in it, nor create in the plaintiff's privilege a right to have the water flow in its natural channel.

Action on the case for the diversion of a watercourse. Plea, the general issue.  Trial by jury at the September term, 1893, Rutland county, TYLER, J., presiding.  The court directed a verdict for the plaintiff, submitting to the jury only the question of damages.  The defendant excepts.

*C. H. Joyce* and *H. A. Harman* for the defendant.

The division of real estate among heirs is presumed to have been made in view of the open use of the property, and any easement or servitude which that use entailed would follow the different parcels. *Harwood* v. *Benton*, 32 Vt. 724; *Goodall* v. *Godfrey*, 53 Vt. 219.

Since by its use at the time of the division the defendant's privilege was discharging the spent water below the dam of the plaintiff's privilege, the owner took the right to so do. *Ritger* v. *Parker*, 8 Cush. 145; *Owen* v. *Field*, 102 Mass. 103.

And this would be not by adverse use or prescription, but as by an implied grant. *Goodall* v. *Godfrey*, 53 Vt. 219; *Smyles* v. *Hastings*, 22 N. Y. 217; *Lyon* v. *Fishmongers Co.*, L. R. 10 Ch. App. 679.

The right obtained by grant is not lost by mere non-user. *Mower* v. *Hutchinson*, 9 Vt. 242; *White* v. *Crawford*, 10 Mass. 183; *Arnold* v. *Stevens*, 24 Pick. 106; *Bannon* v. *Angier*, 2 Allen 128; *Owen* v. *Field*, 102 Mass. 190; *Barnes* v. *Lloyd*, 112 Mass. 224; *Day* v. *Walden*, 46 Mich. 575; *Horner* v. *Stillwell*, 35 N. J. L. 307; *Johnston* v. *Hyde*, 33 N. J. L. 632; *Richle* v. *Hewlings*, 38 N. J. Eq. 20; *Dill* v. *School Board*, 47 N. J. Eq. 421; *Kucchen* v. *Voltz*, 110 Ill. 271; *Roanoke Ins. Co.* v. *Kans. C. & S. E. R. Co.*, 17 S. W. 1000; *Ward* v. *Ward*, 7 Exch. 838; *Jewett* v. *Jewett*, 16 Barb. 157; *Butz* v. *Ihrie*, 1 Rawle 218; *Nitzell* v. *Paschall*, 3 Rawle 81.

*J. C. Baker* for the plaintiff.

It was the right of the plaintiff to have the stream flow by her land in its natural course. Gould, Waters, s. 204; Angell, Waterc., s. 133; *Johns* v. *Stevens*, 3 Vt. 308; *Davis* v. *Fuller*, 12 Vt. 178; *Adams* v. *Barney*, 25 Vt. 225.

The defendant has obtained no prescriptive right to dis-

charge the spent water below her dam, and thereby divert the stream from its natural course.  *Weed* v. *Keenan*, 60 Vt. 74.

It is immaterial what the rights of the original owners in this property were. For more than twenty-six years the defendant made no use of the water in the stream, but allowed it to flow by the land of the plaintiff in its natural channel. She thereby acquired the right to such flow. Angell, Waterc., ss. 496–499 ; *French* v. *Manufacturing Co.*, 23 Pick. 216.

START, J.  The plaintiff and defendant own water privileges on opposite sides of a small stream in the town of Clarendon. These privileges were formerly owned and used by William Brown, from whom both parties derive their title. When both privileges were owned and used by William Brown the water was diverted by a dam, and used to supply mills on the defendant's side of the stream ; and the water that was not thus diverted flowed in the channel until it reached land now owned by the plaintiff, and was there diverted by another dam, and used to supply mills on the plaintiff's side of the stream. William Brown died in 1830, and his estate was divided among his heirs. The plaintiff's privilege has not been used since sometime between 1870 and 1876. The defendant's privilege was not used from 1851 to 1877, when the defendant built mills and diverted the water to supply them the same as William Brown had been accustomed to do, and discharged the spent water at a point below the point where a dam was formerly maintained at the plaintiff's privilege. It appeared that during the time the defendant's privilege was not used all of the water flowed in the channel past the plaintiff's privilege ; and she claims that it is her right to have it flow as it did during this time.

The plaintiff's evidence tended to show that when the de-

fendant's privilege was formerly used the spent water was discharged above her dam, and that she and her grantors had the benefit of all the water. The defendant's evidence tended to show that the spent water was discharged below the dam during all the time his privilege was used by William Brown, his heirs and their grantees, down to 1851, and that neither the plaintiff nor her grantors had any use of the water that was diverted to supply mills on his side of the stream.

The plaintiff requested the court to direct the jury to return a verdict for her. The court complied with this request, and refused to submit any questions to the jury except the question of damages. In this there was error.

The defendant's evidence tended to show that during the time William Brown owned and occupied both privileges, the spent water from the mills on the defendant's side of the stream was discharged below the dam which fed the mills on the plaintiff's side of the stream. If the water was thus discharged during William Brown's ownership of both privileges, when the estate was severed and the different privileges passed to the respective heirs in severalty, the right to thus discharge the water continued, as a matter of legal right, in the respective heirs and their grantees, as an implied grant, the same as though such right had been set forth in the instrument by which the estate was severed, and the privileges set to the respective heirs. *Harwood* v. *Benton*, 32 Vt. 724; *Goodall* v. *Godfrey*, 53 Vt. 219.

The defendant having succeeded to the title of the heirs to whom his privilege was set out, he has a right to discharge water at the same points where it was discharged during the time William Brown owned and used both privileges, unless that right is lost by reason of an adverse use by the plaintiff or his grantors, or by non-use by the defendant and his grantors, for fifteen years. We think the court could not hold, as a matter of law, that the use of the water

by the plaintiff and her grantors was adverse, or that they had exercised any adverse rights.

When the mills on the defendant's side of the stream went to decay, the defendant and his grantors had no use for the water until new mills were erected in 1877 ; and for this reason, from 1851 to 1877, they did not draw water from the stream. Consequently, all the water flowed through the channel into the pond on the plaintiff's side of the stream, and she and her grantors used for a time so much of it as was necessary to propel their machinery; but in so doing they were not in the exercise of an adverse right. They used the water because it flowed naturally along the channel and came into their pond. The plaintiff and her grantors have not deprived the defendant or his grantors of the use of the water. They have done nothing to indicate that their use of the water was in any way adverse to the rights of the defendant and his grantors. They have used no more water than they did while the defendant's privilege was being used, and this quantity gradually diminished until 1876, when the plaintiff ceased to use it; and since that time her privilege has not been used. The plaintiff and her grantors have not erected buildings, or in any way improved their privilege, because of the non-use of the water by the defendant and his grantors. They have done nothing that they could not have lawfully done if the defendant's privilege had been used from 1851 to 1877, the same as it was theretofore used by William Brown. They have done nothing that can be said to be the exercise of an adverse right. The mere use of the water by the plaintiff and her grantors, under the circumstances disclosed by the evidence, was not conclusive evidence of an adverse enjoyment of such use. *Arnold* v. *Stevens*, 24 Pick. 106.

The court could not hold, as a matter of law, that the right to draw and discharge water at the defendant's privilege was lost by non-use. The right, as we have seen,

was created by grant, and could not be lost by mere non-use. Mere non-use, for any length of time, of an easement created by grant, will not destroy or extinguish it. In order to extinguish it by non-use there must be some conduct on the part of the owner of the servient estate adverse to, and in defiance of, the easement, and the non-use must be the result of it, and must continue for fifteen years; or, to produce this effect, the non-use must originate in, or be accompanied by, some unequivocal acts of the owner, inconsistent with the continued existence of the easement, and showing an intention on his part to abandon it; and the owner of the servient estate must have relied or acted upon such manifest intention to abandon the right so that it would work harm to him if the easement was thereafter asserted. There was no evidence of such unequivocal acts on the part of the defendant or his grantors, and the court could not rightfully hold that the easement had been lost by abandonment.

The view we have taken of the evidence and the law governing this case leads us to the conclusion that the question of where William Brown discharged the spent water from the defendant's privilege was material, and should have been submitted to the jury. No question seems to have been made but that the defendant took water from the stream in the same manner that William Brown was accustomed to take it; and if the jury found that he discharged the spent water in the same place where William Brown discharged it, then the defendant was not guilty of diverting the water unless the defendant or his grantors have released or conveyed the right, or the right has been lost in some of the ways indicated in this opinion.

*Judgment reversed and cause remanded.*