COUNTY OF ADDISON *v.* ARTHUR J. BLACKMER ET AL.

May Term, 1928.

Present: WATSON, C. J., POWERS, MOULTON, and CHASE, JJ., and THOMPSON, Supr. J.

Opinion filed November 19, 1928.

386

*Wayne C. Bosworth* and *James B. Donoway* for the plaintiff.

*Charles I. Button* for the defendant.

POWERS, J. This bill in chancery is brought to compel the defendants to discontinue the use of and remove their gas tanks and pumps now installed in close proximity to the south side of the county courthouse in Middlebury. The facts were found

by the chancellor, and a decree was rendered for the defendants. The plaintiff appealed.

Gamalial Painter formerly owned all the land involved in the controversy. On January 7, 1816, he conveyed to the county of Addison a part of such land, on which a courthouse had already been built. In that deed, he described the granted premises as follows: "Being all the land on which the courthouse stands in Middlebury, in Addison County, together with a free and open passage on the whole front of the same to the Center Turnpike Road, so-called, with a free passage around said courthouse on the north, east and south sides for the purpose of repairing or fitting up said courthouse or for the erection of a new courthouse on said premises at all times." The deed specified that the land was conveyed for the express purpose of creating, keeping and having a courthouse for the county of Addison thereon, and it contained a covenant that neither the grantor nor his heirs, executors, administrators or assigns would "erect or build, or cause or suffer to be erected or built any building within thirty (30) feet of the north, east or south sides of said courthouse building, except an attorney's office on the south side of the same, which may be erected or built at a distance of twelve (12) feet from the same."

A new courthouse was built on this land in 1883, which occupies two feet more land to the south and twenty feet more land to the east than did the original building.

The defendant Blackmer stands as a successor to the title of the land south of the courthouse, subject to such of the grants, exceptions, reservations, and covenants in the aforesaid deed as are binding upon him. The other defendant is an associate of some kind in the gasoline business.

Next south of the courthouse there is a grass plot ten feet wide, and next south of that is an open driveway, one rod wide, for many years used by the public as occasion required; and it is found that the land now comprising the grass plot has not been used as a driveway. In and on the grass plot, the defendants have installed and are now using two gas tanks with the usual filling pipes, pumps, and equipment for supplying gasoline to the public. The tanks are buried in the ground and are about four feet from the south wall of the courthouse—the pumps being between six and seven feet therefrom. The latter stand about ten feet high and do not materially differ in

size and shape from those in common use. The chancellor says that he finds from the evidence that these pumps and tanks do not prevent a free passage around the courthouse for the purpose mentioned in the Painter deed. He finds that the location of the tanks and pumps increases the cost of the fire insurance on the courthouse property, and that the Blackmers have been in adverse possession of all the land here involved, except the rights granted in the Painter deed and the driveway above referred to, for more than fifteen years prior to this suit, and that their predecessors in title were in like possession for "a great period of time" prior to 1912.

Under the Painter deed, the right to a free passage along the south side of the courthouse passed to the county by express grant. The easement was established by the deed along that side and next to the building. We say this because it is quite obvious that it was the intention of the parties to the instrument that the rights thus conveyed should attach to that part of the unconveyed land that adjoined the land conveyed. Any other construction of the deed would be unreasonable. The width of the easement thus granted being undetermined by the deed, the law says that it shall be of a reasonable width, considering the purpose for which it was intended. *Palmer* v. *Newman*, 91 W. Va. 13, 112 S. E. 194. In the determination of this question, the deed is to be construed liberally toward the grantee. *Salisbury* v. *Andrews*, 19 Pick. (Mass.) 250, 253. The situation and character of the property for the benefit of which the grant was made, and other circumstances then existing, are for consideration. *Walker* v. *Pierce*, 38 Vt. 94, 97; *Kinney* v. *Hooker*, 65 Vt. 333, 336, 26 Atl. 690, 36 A. S. R. 864. The uses then necessary to the beneficial enjoyment of that property will also be considered, all to the end that the purposes and intentions of the parties may be carried out. The grant being beneficial to the county, its acceptance is presumed. *Pitkin's Admrs.* v. *Montpelier*, 85 Vt. 467, 473, 82 Atl. 671, Ann. Cas. 1914D, 500.

It is not for us to say how wide the granted way is. That is a question of fact that should have been determined by the chancellor. But it is for us to construe the deed, and from it, aided by our general knowledge of such things, we hold that this way was at least twelve feet wide, when granted. A narrower passage would be entirely inadequate to the purposes

specified in the grant. It is quite apparent that the parties had in mind a twelve-foot way; for the law office which Painter had the right to erect was to be twelve feet away from the court-house.

We have said this much regarding this grant, notwithstanding the fact that the plaintiff does not rely upon it in the brief. Not that we propose to transgress our rule that we do not reverse on a ground not taken by the appellant, but it seems essential to develop the point thus far on account of its important bearing upon the words of the covenant relied upon by the plaintiff. This covenant, as we have seen, was against the erection of a "building." Such a covenant, being restrictive and in derogation of the free use of the property unconveyed, is, ordinarily, to be construed strictly. *Peterson* v. *Gales*, 191 Wis. 137, 210 N. W. 407, 408, 47 A. L. R. 956; *Austin* v. *Kirby*, 240 Mich. 56, 214 N. W. 943; *Hutchinson* v. *Ulrich*, 145 Ill. 336, 34 N. E. 556, 21 L. R. A. 391, 393; *Easterbrook* v. *Hebrew Ladies' Orphan Soc.*, 85 Conn. 289, 82 Atl. 561, 41 L. R. A. (N. S.) 615, 620; *Neekamp* v. *Huntington C. C.*, 99 W. Va. 388, 129 S. E. 314, 316. Nevertheless, the intention of the parties is the thing to be determined, and all rules of construction are subordinate aids to its discovery. *Johnson* v. *Barden*, 86 Vt. 19, 29, 83 Atl. 721, Ann. Cas. 1915A, 1243. The word "building" ordinarily refers to a structure inclosing a space within walls and roof. *Nowell* v. *Boston Academy of Notre Dame*, 130 Mass. 209. In common parlance it signifies a structure adapted to and designed for the occupancy of persons or animals, or the sheltering of property. *LaCrosse, etc., R. R. Co.* v. *Vanderpool*, 11 Wisc. 119, 78 A. D. 691, 692. But the word is not always used in this restricted sense. It is one of those broad terms that may be used in various connections and with different meanings. A building is "that which is built." Web. New International Dict. So in its broadest sense it may include most any kind of structure according to the connection in which it is used and the purpose sought to be effected by its use. There is a manifest tendency in the cases to extend its meaning whenever necessary to give effect to the real intention of the parties to the instrument wherein it is used so as to include structures not ordinarily covered by the term. Thus, it is held that a bill board may be a building. *Nussey* v. *Provincial Bill Posting Co.* (Eng.), 16 Ann. Cas. 222; *Pocock* v. *Gilman*, 1 Cab.

& El. 104. A wall or fence may be. *MacGregor* v. *Linney*, 27 Oh. Cir. Ct. R. 490; *Wright* v. *Evans*, 2 Abb. Pr. (N. S.) 308. A railroad embankment, *Long Eaton R. G. Co.* v. *Midland R. Co.* (Eng.), 2 K. B. 574; a tent, *Blackmore* v. *Stanley*, 159 Mass. 6, 33 N. E. 689; or a pavilion, *Buck* v. *Adams*, 45 N. J. Eq. 552, 17 Atl. 961—may be a building within a restrictive covenant. Indeed, the words "building" and "structure" mean the same thing, though usually ·differing slightly in their application. International Dict., *supra*. The manifest purpose of the covenant in question was to protect the rights which Painter had just granted to the county. It is impossible to believe that he intended to leave it in such shape that he could block up the "free passage" granted, so far as the covenant was concerned. This passage could not be "free" if it was obstructed by erections of any kind. With this in mind, it is clear that the covenant was intended to render it impossible to obstruct the passage in any way. The word "building" was used in the sense of "structure"—its equivalent, and must be taken to prevent any encroachment upon the passageway that would hinder or embarrass the county in the enjoyment of its granted rights. So construed, the case in hand is ruled by *Clement's Admrs.* v. *Putnam*, 68 Vt. 285, 287, 35 Atl. 181, and we hold the installation and use of the filling station equipment, being within the area of the grant, is a breach of the covenant and a violation of the plaintiff's rights.

In reaching this conclusion we have not overlooked *Small* v. *Parkway Auto. Supplies*, 258 Mass. 30, 154 N. E. 521, 49 A. L. R. 1361, wherein similar structures were held not to be buildings. But the circumstances there were sufficiently different to distinguish that case from the one in hand. There the pumps violated the provisions of a restriction establishing a building line—which the court assumed was created with a knowledge of the Massachusetts decisions regarding the meaning of the word "building." There, the pumps only offended the eye. Here the pumps actually destroy the "free passage" granted. The finding of the chancellor that they do not prevent such free passage goes for naught, since this result follows as a matter of law from the undisputed facts.

██ ██ Nor are the findings sufficient to establish a substitution of the driveway now used for the granted rights, nor can the defendants stand on a title by adverse possession. Long-

continued non-user, alone, would not extinguish the rights expressly granted. *American Brass Co.* v. *Serra,* 104 Conn. 139, 132 Atl. 565, 567; *Mason* v. *Horton,* 67 Vt. 266, 271, 31 Atl. 291, 48 A. S. R. 817; *Percival* v. *Williams,* 82 Vt. 531, 538, 74 Atl. 321. The finding as to the use and possession of the grass plot does not show an adverse title. The grant was to a public use, and lands so granted have been protected from such acquisition since January 1, 1842 (R. S. Ch. 58, § 4), and here nothing is found as to the possession prior to that date. All that is said by the chancellor is that the Blackmers have been in adverse possession of the land we are talking about since May 22, 1912, and, as we have seen, that their predecessors in title were in such possession thereof ''for a great period of time previous'' to that date. This is entirely too indefinite and inadequate to show adverse title prior to the passage of the statute referred to.

The conclusions hereinabove reached render it unnecessary to consider the plaintiff's rights under the Middlebury College deed.

*Decree reversed, and cause remanded.*