RHODES CEMETERY ASSOCIATION *v*. S. M. MILLER *et al.*

(No. 8988)

Submitted February 7, 1940. Decided March 5, 1940.

140

*Charles P. Wilhelm,* for appellant.

*L. F. Everhart* and *Frank B. Everhart,* for appellee Rhodes Cemetery Association.

MAXWELL, JUDGE:

This controversy pertains to the bounds of a small cemetery on the defendant's farm and the course and width of a passageway between the cemetery and the public road. From a decree determinative of these questions in accordance with the claim of the plaintiff the defendant, S. M. Miller, has appealed.

In 1902 Joseph T. Rhodes, then the owner of a farm of a little more than 100 acres in Kingwood District, Preston County, executed and delivered to Rhodes Cemetery Association a deed for a burial plot of one-half acre in the midst of his farm, and a right of way for passage to and from a public highway whereon the farm abuts.

In the deed the descriptions of the plot and right of way are as follows:

"Said plot of land conveyed herein contains about one-half acre be the same more or less and is further described as the plot of land where my wife Elizabeth Rhodes is now buried with sufficient land surrounding said grave as will constitute about one-half acre as aforesaid.

"In consideration of the foregoing the said grantor herein also conveys to said grantee a convenient right of way over and through his lands to said plot of land

herein conveyed for a distance of about five hundred yards beginning at a point in the county road leading from the Williams mill to the Kingwood and Tunnelton Pike and from that point passing in a westerly course between his house and barn to said plot of ground."

In 1930 the defendant, S. M. Miller, obtained title to the Rhodes farm, with the exception of an undivided interest of Elizabeth Rhodes in a part thereof. Subsequently Miller acquired Elizabeth's interest. The deeds to Miller make neither exception of the plot nor reservation of the right of way, but this is not important because of the recorded out-conveyance by Joseph T. Rhodes in 1902. It was incumbent on Miller to take notice of facts appearing in recorded instruments in his chain of title.

The controlling question is whether the plot and the passageway granted by the Joseph T. Rhodes deed of 1902 are capable of definite location.

Not many months after the death of his wife in 1901 and her interment on the farm, Joseph T. Rhodes caused to be erected around her grave a suitable iron fence inclosing a plot forty feet square. The bodies of fourteen or fifteen persons have been buried within the inclosure. Defendant Miller takes the position that because of uncertainty of description in the purported grant of the cemetery the boundaries thereof cannot, under construction most favorable to the plaintiff, be extended beyond the iron fence. The plaintiff insists that it is entitled to one-half acre as called for in the deed to the Association.

In 1917 the four sons of Joseph T. Rhodes, then deceased, by deed of partition, divided the farm among themselves in accord with their father's last will, executed December 21, 1915, the date of probate not appearing in the record. The partition deed of 1917 discloses that the north line of the parcel of 25.8 acres thereby granted to George H. Rhodes, is the south line of Joseph U. Rhodes' parcel of 40.3 acres, and that the north line of the cemetery is coincident with the main dividing line between the parcels of George and Joseph. In the north bounds of George's

tract there are calls for three cemetery lines, each 147.5 feet in length, constituting the other three sides of a square plot of one-half acre. The deed of partition recites that it was made in accordance with a plat attached thereto and made part thereof. A copy of the plat appears in the record and plainly portrays the situation; but whether it was in fact recorded is not disclosed by the papers before us. However, regardless of the question of recordation of the plat, the partition deed was promptly placed of record, and, as above explained, it makes clear and unequivocal the fact that the Rhodes devisees excluded from their partition a definitely located cemetery 147.5 feet square, being one-half acre. The recordation of that deed constituted fair notice to any and all subsequent purchasers of the land that the bounds of the cemetery had thus been defined, and that the Rhodes devisees, in recognition of the grant which had been made by their father in 1902 to the Cemetery Association, were acknowledging the right and title of the Association to the plot thus defined.

The Association accepted this determination of the situation and has acted thereon by adopting the description delineated by the partition plat, forming the boundary contended for in this suit. The four sons, devisees, were the immediate successors in title to their father's farm. We are impressed that the practical construction thus employed by them and the Association is conclusive of the boundaries of the cemetery, and that this definiteness having been arrived at and acquiesced in long before S. M. Miller acquired the Rhodes farm, he is bound thereby. "Where a deed, conveying land, is of doubtful construction as to the boundaries, the construction given by the parties themselves, as shown by their acts and admissions, is deemed to be the true one, unless the contrary be clearly shown." *Stone* v. *Clark,* 1 Metc. (Mass.) 378, 35 Am. Dec. 370. Consult: *Gibney* v. *Fitzsimmons,* 45 W. Va. 334, 342, 32 S. E. 189; *Truett* v. *Adams,*

66 Cal. 218, 5 Pac. 96; 16 Am. Jur., p. 536; 18 Corpus Juris, p. 279.

The defendant says that when he acquired title to the farm he was not informed of any right of way to and from the cemetery, but, he says, if there be, in fact, such way, it extends, in part, over a different route from the one claimed by the Association. If he must recognize that there is a way of ingress and egress, he is in accord with the plaintiff that from the public road to a point immediately west of the dwelling on the farm the right of way coincides with what is denominated the "farm road." It is with relation to the route from that point to the cemetery that the parties differ.

The plaintiff avers that from the stated point the way continues westward about 200 feet, past a large barn, thence southward to the cemetery. This is the upper route.

The defendant contends that from the mentioned point in the "farm road" just west of the residence, the way to the cemetery extends southward between the dwelling and a small barn, crossing a ravine, thence westward up a grade to the cemetery. The evidence introduced by the defendant in support of this contention is not persuasive. His witnesses testified that such, in the main, was the route followed when the body of the deceased wife of Joseph T. Rhodes was carried by pall bearers from the home to the cemetery in 1901, and that on various Memorial Days visitors to the cemetery walked on this route to the cemetery after having parked their automobiles near the residence. An adult son of the defendant who makes his home with his father testified that since his father acquired the farm there have been three interments in the cemetery, and admits that on each occasion the funeral procession followed the route for which the plaintiff asserts claim.

For the plaintiff many witnesses testified that after the first burial in this cemetery the way habitually followed at funerals was the route which the plaintiff alleges is the proper one. The trial court correctly interpreted

this user, which took place both before the death of Joseph T. Rhodes and thereafter, as a practical construction of what was meant by the grantor, in his deed of 1902, with respect to the right of way. "Where a right of way over the property of another is granted, but the location is not definitely described, the practical use of a particular way, acquiesced in by the parties, fixes the location, and thereafter the location cannot be changed by either party without the other's consent." *Lexington & E. Ry. Co.* v. *Hargis*, 180 Ky. 636, 203 S. W. 525, 527. Many cases and texts state this rule. Consider *Baker* v. *Evers*, 137 Va. 492, 120 S. E. 278; *Kretz* v. *Fireproof Storage Co.*, 127 Minn. 304, 149 N. W. 648, 955; 19 Corpus Juris, p. 908.

There was no error in the trial court's factual analysis whereunder the upper route was determined to be the one intended by Joseph T. Rhodes in his deed of 1902.

The result above indicated in respect of the right of way is augmented by testimony that the grantor made a rough pencil sketch on the inside of the back cover of the cemetery deed indicating the course of the right of way to be as the plaintiff avers. Also, there is testimony that on one occasion, subsequent to the execution of the deed, the grantor pointed out this same route as the one intended.

There remains the question of the width of the way. Joseph T. Rhodes granted to the Cemetery Association "a convenient right of way over and through his lands" to the cemetery. No width was mentioned. The trial chancellor, having in mind the purposes for which the way was intended, fixed the width at sixteen and one-half feet. There was no error in this ascertainment. It was within his sound discretion to determine what would be a reasonable width. "In determining the extent of a right of way, it is proper to consider the whole scope and purpose of the deed creating it, the manifest intent of the parties in its execution and the situation of the property." Jones on Easements, sec. 385. Consider *Palmer* v. *Newman*, 91 W. Va. 13, 112 S. E. 194; *Addison County*

v. *Blackmer*, 101 Vt. 384, 143 Atl. 700; *O'Brien* v. *Murphy*, 189 Mass. 353, 75 N. E. 700; *Drummond* v. *Foster*, 107 Me. 401, 78 Atl. 470.

Perceiving no error in the decree under review, we affirm the same.

*Affirmed.*