Cathy GREINER, Plaintiff,

v.

COLUMBIA GAS TRANSMISSION CORP., et al., Defendants.

Civil Action No. 2:97–1126.

United States District Court,
S.D. West Virginia,
Charleston Division.

March 25, 1999.

J. Mark Adkins, Timothy C. Bailey, Guy R. Bucci L.C., Charleston, WV, for plaintiff.

Mary H. Sanders, Huddleston, Bolen, Beatty, Porter & Copen, Charleston, WV, Amos W. Perrine, Columbia Gas Transmission Corp., Charleston, Lisa G. Beckerman, Lawrence Greenwald, Stroock, Stroock & Lavan, New York City, for defendant Columbia Gas Transmission Corp.

Benjamin N. Snyder, Charleston, WV, for defendant Columbia Natural Resources, Inc.

William L. Bands, Susan M. Harman, Harry F. Bell, Jr., Bell & Associates, Charleston, WV, Deana LeFevre, Charleston, WV, for defendant Mountaineer Gas Company.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are motions for summary judgment filed by Defendant Mountaineer Gas Company ("MGC"), Plaintiff Cathy Greiner, and Defendant Columbia Natural Resources, Inc. ("CNR"). The motions are

ripe for review. After careful consideration, the Court **DENIES** the motions.[1]

## I. FACTUAL BACKGROUND

### A. *Procedural Posture*

Plaintiff Cathy Greiner alleges she was injured by a negligently maintained gas well access road[2] adjacent to U.S. Route 52. Greiner alleges water runoff from the access road formed ice on Route 52, which she encountered while driving on February 7, 1995.

On July 16, 1997 Greiner commenced the instant action in the Circuit Court of Mingo County, West Virginia. Greiner named Columbia Gas Transmission Corporation ("TCO"), CNR, MGC and Nighbert Land Company as Defendants. The action was removed to this Court. Greiner's claims against TCO were later dismissed

1. MGC's and CNR's motions are denied with prejudice; Greiner's motion is denied without prejudice.

2. The gas well and access road are located on land presently owned by Rebecca Sartin and occupied by Okey Sartin, Sr.

3. TCO remained in the action as a cross-claim defendant. *See Greiner v. Columbia Gas Transmission Corp. (In re Columbia Gas Transmission Corp.),* 219 B.R. 716, ——, slip op. at 5 (Bankr. S.D. W.Va.1998).

4. The Court recognizes "a serious question" exists as to whether Section 1367 is applicable to cases in federal court on bankruptcy "related to" jurisdiction. *Chapman v. Currie Motors, Inc.,* 65 F.3d 78, 81 (7th Cir.1995) (Posner, C.J.). The Fourth Circuit has not addressed the issue, but courts "have nearly uniformly concluded that there exists jurisdiction supplemental to bankruptcy jurisdiction." Susan Block–Lieb, *The Case Against Supplemental Bankruptcy Jurisdiction: A Constitutional, Statutory and Policy Analysis,* 62 Fordham L.Rev. 721, 728 (Feb.1994) (arguing against such a finding). After review of the case law and in the absence of controlling contrary authority, the Court follows the analysis used by Chief Judge Posner in the Seventh Circuit and Judge Garza in the Fifth Circuit. *See Chapman,* 65 F.3d at 80–82; *Doddy v. Oxy USA, Inc.,* 101 F.3d 448, 455–56 (5th Cir.1996).

Essentially, a claim "related to" bankruptcy is viewed as the "main claim" and any other

because of TCO's discharge in bankruptcy.[3] Greiner's claims against Nighbert were dismissed by agreement.

Pursuant to the Court's April 15, 1998 Scheduling Order, the property issues were bifurcated from liability. As such, discovery has proceeded only on the property issues.

### B. *Jurisdiction Issue*

■■■ At the Court's direction, the parties have submitted memoranda concerning the Court's continued jurisdiction. The case was removed to this Court because it was "related to" TCO's bankruptcy. Although Greiner's claims against TCO have been dismissed, the Court may exercise supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367(a).[4]

claims are analyzed under the typical Section 1367 analysis. *Doddy,* 101 F.3d at 456. If the "related to" claim is dismissed, the Court has discretion whether to exercise jurisdiction over the remaining claims. *Doddy,* 101 F.3d at 456 (affirming decision not to remand); *see also Chapman,* 65 F.3d at 81 (affirming decision to remand when bankruptcy is dismissed) ("But where the only basis for federal jurisdiction over a claim is that it is pendent or ancillary, or as is now called 'supplemental,' to a federal claim, the court should be, and it is, allowed to relinquish jurisdiction over the supplemental claim if the federal claim falls out of the case before judgment."); *Security Farms v. International Brotherhood of Teamsters,* 124 F.3d 999, 1009 n. 5 (9th Cir. 1997) (applying Section 1367 to a "related to" case and finding jurisdiction without further analysis).

Plaintiff argues the Court should abstain from hearing or remand the case based upon 28 U.S.C. § 1334(c). First, the Court notes that abstention is inappropriate where, as here, the only state civil proceeding was removed to federal court. Consequently, there is no parallel state proceeding. "'If [the] Court were to abstain, nothing would happen because there is only one lawsuit. What movant really seeks is remand ...back to State Court.'" *Security Farms,* 124 F.3d at 1010 n. 10. Second, Section 1334(c)(1) concerns discretionary abstention and, as stated *infra,* the Court exercises its discretion to hear the remaining claims under supplemental jurisdiction. Section 1334(c)(2) mandates

Under 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" The Court independently considers the claims and finds them to be part of the same case or controversy. A common nucleus of operative fact, concerning Plaintiff's car accident, underlies all the claims, which seek to assess liability for the accident. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, the Court may exercise supplemental jurisdiction over the remaining claims.

■ The Court's determination of whether to exercise such jurisdiction is discretionary. *Shanaghan v. Cahill,* 58 F.3d 106, 109 (4th Cir.1995); *Sayre v. Potts,* 32 F.Supp.2d 881, 889 (S.D.W.Va. Jan.8, 1999) (Goodwin, J); *Clark v. Milam,* 813 F.Supp. 431, 435 (S.D.W.Va.1993) (Haden, C.J.). The doctrine of supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Shanaghan,* 58 F.3d at 110 (quoting *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

The Court may decline to exercise supplemental jurisdiction over a claim if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The only subsections arguably relevant are (2) and (3).

■ As to subsection (2), the Court has previously recognized this question as a " 'value judgment' " based on a "qualitative rather than quantitative" analysis. *Clark,* 813 F.Supp. at 435 (quoting *Moore v. De-Biase,* 766 F.Supp. 1311, 1319 and n. 15 (D.N.J.1991); *Martin v. Drummond Coal Co., Inc.,* 756 F.Supp. 524, 527 (N.D.Ala. 1991)); *see also Hunter v. Estate of Baecher,* 905 F.Supp. 341, 344 (E.D.Va.1995). Resolution turns on " 'whether the state law claims are more complex or require more judicial resources to adjudicate or are more salient in the case as a whole than the federal law claims.' " *Id.* (quoting *Moore,* 766 F.Supp. at 1319). Here, the state law issues are not so complex or salient as to warrant remand.

As to subsection (3), although the Court has dismissed the claims which granted original jurisdiction, the Court declines to remand the case. It is more convenient for the parties and witnesses and better conserves judicial resources to try the claims sooner rather than later. Moreover, the case has progressed substantially before this Court. Because the Court is familiar with the facts and issues, and has set a trial date of January 2000, the Court will likely reach a final determination of the case before a state court, which might have a far busier docket, could. Finally, a federal court sitting in diversity can apply state law regarding property and personal injury issues just as easily as a state court can. Consequently, the Court will exercise supplemental jurisdiction over the remaining issues. *Accord Doddy,* 101 F.3d at 456 (affirming decision not to remand when litigation had proceeded for two years,

abstention based upon a "timely motion." The case has proceeded before the Court since November 19, 1997, and TCO was dismissed from the action on April 17, 1998. Because the action has progressed substantially before the Court, Greiner's motion is

not timely. Next, Greiner argues the Court should remand the case under 28 U.S.C. § 1452(b) for "equitable reasons." On the contrary, the Court determines, *see infra,* equitable reasons favor retaining jurisdiction.

parties had filed substantial pleadings, extensive discovery had been completed, summary judgment motions were pending, and the claims did not involve novel or unsettled state law).

## C. Chronological Factual Development of the Property Issue

The parties agree on the progression of deeds and transactions concerning the subject gas well, pipeline, and access road.

On November 15, 1928 mineral owner Nighbert leased five tracts to United Fuel for mining and operating oil and gas wells. The grant gave United "all other rights, privileges, appliances and structures necessary, incident or convenient for the operation of this land alone and conjointly with neighboring lands[.]" Ex. A to Ex. 5, MGC's Mot. Summ. J. On March 11, 1938 Burning Creek–Marrowbone Land Company granted United "the right to lay, maintain, operate and remove a pipe line for the transportation of gas ... with the right of ingress and egress to and from same." Ex. 9, *id.* In 1938 the subject gas well was drilled and the access road was constructed. Exs. 7 and 8, *id.* In 1963 United plugged and abandoned the well. Affidavit of Plugging and Filling Well, Ex. 10, *id.*

In 1970 United and TCO merged, with TCO surviving the merger. A June 30, 1971 quitclaim deed transferred all of United's title and right to real and personal property to TCO. Ex. 10, *id.*

In 1980 TCO contracted with Columbia Gas of West Virginia ("CGWV") to lay a new pipeline from TCO's facilities, with each bearing a portion of the costs. On August 26, 1980 Rebecca Sartin, owner of the servient tenement, gave a Right of Way to CGWV, granting "an easement and right of way to construct a gas pipeline ... with the right of ingress and egress to and from the same." Ex. 13 C, *id.* An easement, executed the same day, further states the right of ingress and egress is "over adjoining land Landowner [sic] for vehicular and pedestrian traffic to and from the aforemention[ed] parcel of land upon which the above easement is granted to exercise all the rights herein granted[.]" Ex. 13 D, *id.*

In 1984 CNR was formed. In 1990 TCO granted CNR "all of [TCO's] right, title and interest in and to the following described properties":

*First:* The oil and gas leases, and the leasehold estates created thereby, listed and identified on the schedule ... designated as Exhibit A, and all of [TCO's] rights and ownership therein;

*Second:* All oil and/or gas wells, or undivided interests therein, together with all appurtenant machinery, materials and equipment used for the production of oil and/or gas therefrom[;]

...

*Fourth:* All improvements, easements, permits, licenses, servitudes, rights of way and other property of every kind and character, situated upon or used or useful or held for future use in connection with the exploration, development or operation of any of the lands, leases, wells or interest therein, described ... in paragraphs FIRST through THIRD, inclusive, above[.]

Ex. 10, *id.* TCO reserved for itself

All of its existing pipelines, meters, compressor stations, related structures, fixtures and appurtenances located on the lands ... together with ... the right to gather, measure, compress and transport gas ... over, under, through and across the lands covered ... with the right to utilize any and all easements, rights-of-way and servitudes granted or created by said leases and related agreements which are necessary, incident to or convenient for the construction [or] maintenance ... [of such pipelines.]

*Id.* The lease that includes the gas well and access road at issue is included in Schedule A.

MGC and CNR have submitted affidavits of MGC, CNR and TCO present and

former employees stating TCO inspected and maintained the access road. *See* Exs. 7 and 8, *id.;* Ex. 1, CNR's Resp. and Mot. for Summ. J. CNR further alleges it has never used the access road. Ex. 1, CNR's Resp. and Mot. for Summ. Judg. MGC admits it has used the road regularly for scheduled inspections. Ex. 9 at 3, *id.*

MGC and CNR move for summary judgment on the property issue. Greiner moves for summary judgment on liability against MGC.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

> Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for ... discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* Court explained, the "mere existence of a scintilla of evidence in support of the plain-

tiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]" *Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Serv. Corp.,* 962 F.Supp. 75, 77 (S.D.W.Va.1997); *Spradling v. Blackburn,* 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir.1995).

### B. *Property Issues*

Both MGC and CNR argue they do not have an easement to the access road. MGC argues its deed gave it only the right to ingress and egress, without naming the road in question, in order to service its pipeline section. CNR argues it never received even a right to ingress and egress, nor has it ever used the road in question.

Review of the case law, the deeds and the legal framework in the area demonstrates MGC has an easement. West Virginia case law implicitly has classified a right to ingress and egress as an easement. *See, e.g., Moran v. Edman,* 194 W.Va. 342, 460 S.E.2d 477 (1995) (approving the trial court's finding of a prescriptive easement that gave the plaintiffs "a means of ingress and egress"). Indeed, MGC would not wish the law to be different. If the right to ingress and egress were not an easement, it would be merely a license which would be terminable at the will of the landowner. *See* Roger A. Cunningham, William B. Stoebuck & Dale A. Whitman, *The Law of Property* § 8.1 (2nd

ed.1993) (also classifying the right to ingress and egress, particularly when given as part of a profit to remove natural resources from the land, as a "secondary easement"). Few companies would agree to an easement for the construction and maintenance of a pipeline if the right to ingress and egress were a mere license rather than an easement.[5]

██ Similarly, CNR also has an easement, contrary to its argument that TCO retained the subject gas well and, thus, the right to ingress and egress to the well. The deed between CNR and TCO contains clear, unambiguous language granting "[t]he oil and gas leases" listed on Schedule A and "[a]ll oil and/or gas wells" and all easements "situated upon or used or useful or held for future use in connection with the exploration, development or operation of any of the lands, leases, wells or interest therein." Ex. 10, MGC's Mot. Summ. J. The lease concerning the subject gas well is listed on the Schedule A and the deed states *"all"* gas wells. Based on this unambiguous language, the subject gas well, the lease interest in the well and the easements connected with the well were deeded to CNR.[6]

CNR argues the parties intended only to transfer the active gas wells to CNR and that, because the subject well was plugged in 1963, that well was not transferred, nor

were the associated easements. The parties easily could have manifested such intent by stating "all *active* oil and/or gas wells." They did not. Similarly, in the provisions reserving certain property to TCO, it does not include a reservation for all inactive gas wells. There is nothing in the deed, executed between commercially sophisticated entities with counsel, from which the Court can conclude the parties intended to transfer only active gas wells to CNR.[7]

██ Having concluded both MGC and CNR have easements in the road, the Court determines that neither is entitled to summary judgment. West Virginia case law uniformly imposes a duty on an easement owner to maintain the easement. "The duty to maintain an easement in such condition that it may be enjoyed is upon those entitled to its use, in the absence of some contractual or prescriptive obligation upon the owner of the servant estate to so maintain it." *Carson v. Jackson Land and Mining Co.,* syl. pt. 2, 90 W.Va. 781, 111 S.E. 846 (1922); *Moran v. Edman,* syl. pt. 4, 194 W.Va. 342, 460 S.E.2d 477 (1995). Because the deeds granting easements do not place the obligation for maintenance upon the servient owner, it is borne instead by the easement owners.[8]

██ MGC attempts to refute the application of such principle to the instant case

---

**5.** MGC next contends its easement for ingress and egress is not for the subject road because the deed does not specifically refer to the road. The evidence is clear that MGC has used the road on a regular basis since 1980. Ex. 9 at 3, MGC's Mot. Summ. J. The Supreme Court of Appeals of West Virginia has addressed essentially this question and held that the parties' practical use fixes the location of the easement unless contemporaneously challenged. "In a deed granting a 'convenient right of way' over the lands of the grantor, specifying the distance between two fixed terminals, but not definitely describing the course thereof, the practical use of a particular way and acquiescence therein by the parties fixes that as the location of the easement." *Rhodes Cemetery Ass'n v. Miller,* syl. pt. 2, 122 W.Va. 139, 7 S.E.2d 659 (1940). Because MGC has used the road regularly since 1980, the secondary easement is fixed to the location of the road.

**6.** Although CNR argues it has not used the road, it offers no authority to support that mere non-use is sufficient to equate abandonment and release of an easement.

**7.** In a variation of its argument, CNR argues it was deeded only those wells "used for the production of oil and/or gas therefrom." Ex. 10, MGC's Mot. Summ. J. Examination of the entire clause, with particular attention to its punctuation, reveals this participle phrase applies only to "machinery, materials and equipment," not to all preceding nouns. Again, the meaning CNR seeks could have been communicated clearly and easily by stating "all *active* oil and/or gas wells," language not included.

**8.** Further, MGC argues it did not foresee having the duty to maintain the road because it did not design or construct the road. West

by arguing because the injured Plaintiff is a third-party, no duty was owed to her. The West Virginia Court has declared previously,

> So a man may make lawful use of his property, but if he is so negligent and careless in the use thereof as to inflict injury upon others he must answer in damages. It is a principle vital and indispensable in organized society that everyone must so use his property as not to injure others.

*Snyder v. Philadelphia Co.*, 54 W.Va. 149, 153, 46 S.E. 366, 367 (1903). The same principle has been applied to easement holders regarding their duty to maintain an easement. "It should also follow that the easement holder is liable to third persons for injuries caused them by lack of maintenance." Cunningham, *et al., The Law of Property* § 8.9 (citing *Reyna v. Ayco Dev. Corp.*, 788 S.W.2d 722 (Tex.App. 1990)). MGC offers no contrary West Virginia authority. A summary judgment movant bears the burden of proving not only that no genuine issues of material fact remain extant, but also that it is entitled to judgment as a matter of law, which MGC and CNR have failed to do.[9] The Court has fully considered all other arguments raised by MGC and CNR, and finds them without merit to warrant summary judgment.

### C. Liability Issue

Plaintiff moved for summary judgment against MGC, arguing MGC's memoranda and attached affidavits demonstrate not only that MGC had an easement in the road but also that it is liable for failing to maintain the road. As noted *supra,* the Court bifurcated property issues from liability issues. Plaintiff has raised this issue prematurely. Accordingly, the Court **DENIES** Plaintiff's motion without prejudice.

### III. CONCLUSION

Accordingly, the Court (1) **DENIES** MGC's and CNR's motions for summary judgment; and (2) **DENIES** without prejudice Greiner's motion for summary judgment.

The Clerk is directed to send a copy of this Order to all counsel of record.

---

Virginia case law declares owners of an easement have the duty to maintain the easement. MGC next argues it is custom and practice within the industry for the production component to maintain the road, or that under state code and regulations, the gas well operator has a duty to reclaim the land and maintain the access road. Neither MGC nor CNR have submitted West Virginia authority that such custom and practice or statutes and regulations preempt the common law duty of easement owners to maintain their easements. Moreover, because the statutes cited were not enacted until 1994, after both MGC and CNR had easements to the road, they cannot provide the basis for arguing the parties' anticipated burdens. In the absence of controlling authority, the Court declines to so extend the statutes' and regulations' reach.

9. MGC raises several other arguments that are more properly addressed after full discovery. For instance, MGC argues (1) the Sartins have "reserved the right and duty" to control water run-off, based solely on the Sartins' alleged past behavior and (2) the West Virginia Department of Transportation, Division of Highways is the party responsible for water run-off on Route 52. If discovery reveals support for these arguments, they may be raised again.