STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of John A. }
Russell Corp.     }
         } Docket No. 230-11-99 Vtec
         }
         }

Decision and Order

Appellant John A. Russell Corporation appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Clarendon, reversing a decision of the Zoning Administrator to issue a zoning permit to Appellant and denying Appellant's application for a zoning permit for a bituminous asphalt plant. Appellant is represented by Edward V. Schweibert, Esq. and Mary Grady, Esq.; Interested Persons Marjorie Southard, Henry Vergi, Albert and Mary Trombley, Bernard and Barbara Doty, Richard White, Elizabeth Mangels, Shirley Loomis, Helen Darby, Shelly Allen and Doris Roach are represented by Mary C. Ashcroft, Esq.; and the Town is represented by John D. Hansen, Esq.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellant applied to the Zoning Administrator for a permit to build an asphalt plant on property located on the east side of Route 7B in the North Clarendon area of the Town of Clarendon, in the Commercial-Industrial zoning district. The Zoning Administrator issued the zoning permit, which is the subject of the above-captioned appeal. The ZBA reversed that decision and denied the zoning permit on the basis that the proposed asphalt plant exceeds 35 feet in height. The issue in the case is whether the maximum height in the district under § 422 of the Zoning Regulations applies to the proposed project.

The proposed asphalt plant consists of the following structures and equipment, approximately in order of their involvement in the process of making so-called asphalt hot mix product:

 Storage tanks for asphalt cement raw material, and storage tanks for fuel for the process machinery.
 Feed bins for aggregate raw material, with conveyors.
 A bucket elevator.
 The batch tower, consisting (from top down) of a sizing screen, holding bins for the sized aggregates and asphalt cement, weight scales for the aggregate and asphalt cement, a pugmill mixer, and a discharge gate under the mixer.
 A bag house to control air pollution from the plant.
 An emission exhaust stack.

A drag slat conveyor to transfer asphalt hot mix product to product load-out silos.
Three insulated product load-out silos.

The project will also have an office trailer, equipped with toilet facilities. The batch tower, the bucket elevator, the drag slat conveyor, the product load-out silos, and the emission exhaust stack all exceed 35 feet in height. The plant as a whole was originally proposed to be 85 feet in height, which represented the anticipated height of the smokestack. From the schematic diagram in evidence, it appears that the tallest component is the drag slat conveyor approximately 71 feet in height, that the exhaust stack for emissions is 60 feet in height, that the batch tower is approximately 59 feet in height, and that the product load-out silos are each approximately 52½ feet in height.

The batch tower and its equipment will be enclosed in corrugated metal siding, to limit the noise emitted by the machinery, to limit access to the machinery, and to limit odors and emissions. The bucket elevator could also be enclosed in metal siding. The conveyor could also be enclosed in metal siding. The insulated silos hold the heated asphalt hot mix product in heated condition for up to 12 or 14 hours, before it is loaded into trucks.

In 1979, 1982, and 1993, Zoning Administrators in Clarendon have issued zoning permits for the following uses in the Commercial/Industrial zoning district which exceeded the 35' height limitation: a ready-mix concrete plant (2 permits), an asphalt plant, a church spire, and a cement storage silo. None of these permits was appealed to or addressed by the ZBA or by a court.

The Town of Clarendon 22-year-old zoning regulations are less extensive than those in many other towns. They do not define any terms, they do not provide any exceptions to the height limitations (for example, as in some other zoning regulations, for church spires, telecommunications towers, or any other features), and they intermix the terms building and structure in several places without a distinction's being made between the terms. (See §§ 123, 124, 225, 245 and 280). The state zoning statute does not define the term 'building.' The regulations as enacted in 1976 imposed no height limitation for buildings or structures in the Agricultural and Rural Residential zoning district (§ 420) or in the Commercial and Residential zoning district (§ 421), but only imposed such a limitation in the Residential 43,560 zoning district (§ 430), in which the "building height maximum" is the lesser of three stories or 35 feet and in which site plan approval is required for any non-residential uses.

As amended in 1979 and in effect at the time of the 1999 application in the present case,

the zoning regulations continue to lack a definition of the term "building," continue to lack any exceptions to the height limitations, and continue to intermix the terms building and structure. Most importantly for the issue in the present case, even though the zoning district provisions were amended (see § 210), the amended regulations did not impose any height limitation for buildings or structures in the Agricultural and Rural Residential zoning district (§ 420 - not amended) or in the Commercial and Residential zoning district (§ 421), and the amended regulations did not change the height limitation in the Residential 43,560 zoning district (§ 430 - not amended). Rather, the 1979 amendments added the Commercial-Industrial zoning district (§ 422), in which residential, agricultural, commercial, industrial, retail, wholesale, manufacturing,

warehouse and research uses are all permitted, and imposed the same building height maximum of 35 feet as in the Residential zoning district. We must treat these amendments as having been made advisedly and as having intended to create a height limitation in the Commercial-Industrial zoning district, even though the district was earmarked for industrial plants such as this one that might reasonably be expected to have components exceeding 35 feet in height.

Appellant argues that the asphalt plant and all its components are structures, but do not fall within the ordinary meaning of the term building. The ordinary meaning of the word ' building' as it is used in the Clarendon Zoning Regulations as a whole, is that of a structure enclosing a space or sheltering contents, as in Addison County v. Blackmer, 101 Vt. 384 (1928), cited in In re Willey, 120 Vt. 359 (1958). It may be used for human or animal occupancy, but equally may be used to contain materials, equipment, product or contents. We need not determine whether an entirely unenclosed structure such as a telecommunications antenna would be considered a " building" under the Clarendon Zoning Regulations, as the components of the asphalt plant are largely enclosed with metal panels, and function as a building. That is, the enclosures are adapted to contain the materials used in the plant, the component parts and equipment of the plant, the product from the plant, and to conduct the emission gases from the plant into the air.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that the proposed asphalt plant qualifies as a building under the Clarendon Zoning Regulations, and therefore is subject to the height limitation of the Commercial-Industrial zoning district.

Done at Barre, Vermont, this 22nd day of January, 2002.


_____

Merideth Wright
Environmental Judge