ERWIN A. WILSON & another *vs.* MIDDLESEX COMPANY
& another.

Middlesex.    November 14, 1922. — March 2, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Equitable Restriction. Deed,* Condition.

The owner of a tract of land on the southerly side of a street in a city conveyed it in lots by deeds, each containing a provision in substance that "this conveyance is made on the express condition that no building shall ever be erected on the above described premises nearer" the street "than the line of the fronts of the other buildings on the south side of " it, which were eighteen feet from the street. One such conveyance was made in 1835 to grantees to whom, four years later, the same parties conveyed all the grantor's right, title and interest in the eighteen foot strip, the deed containing the provision that the grantees "their heirs and assigns shall forever have the right to use and improve said last described piece of land as a garden or yard or passageway over which to pass and repass to and from their said premises &" the street "with the privileges thereto belonging and the right to enclose the same with a fence out as far on" the street "as the northerly line of the front of the fence now standing in front of" a certain house thereon, "provided however that" the grantees "shall never erect any buildings thereon, and" they, "their heirs & assigns shall forever have an easement in

and over" the street. *Held,* that the intent of the parties as shown by the deeds taken together was to create an equitable restriction as to the eighteen foot strip bordering the street for the benefit of the owners of other lots conveyed by the common grantor with provisions like those in the deed of 1835, and that the intent was not to create an estate upon condition.

The owner of the lot conveyed in 1835 as above described erected and maintained for more than twenty years within the restricted area a stone stairway twenty and one half feet by six feet leading below the surface of the ground to a basement. It was not covered and had around it above the ground a metal railing four feet high. *Held,* that such structure was not such a "building" as was prohibited within the restricted area.

The owner of the lot above described erected and maintained and used for more than twenty years an addition to their building fourteen feet long which encroached upon the restricted area seven feet from his building. The original grantor, then an owner of lots in the original tract entitled to the benefit of the restrictions, objected, brought a writ of entry in the Land Court and, by agreement with the owner of the encroaching building, obtained its removal. No other owner of a lot entitled to object did so. In a petition in the Land Court by the owner of the encroaching building for registration of his title, it was *held,* that

   (1) The title was subject to the rights of the original grantor against the maintenance of a building upon the restricted area;

   (2) So far as the owners of the other lots who had not objected to the maintenance of the encroaching structure for twenty years were concerned, the title was subject to the original restriction with the exception that so much of the petitioner's land as had been covered by the encroaching structure was no longer subject to such restriction as to such other lots.

The execution by the original grantor and by the owner of all lots in the tract above described, excepting the petitioner, of an indenture whereby, for a consideration, six feet of the eighteen foot strip farthest from the street was released, as to the lots of such owners, from the restriction and the building of structures within that six foot area in accordance with such releases was permitted, was *held* not to be sufficient to show that the original scheme of restriction had been abandoned or the restriction extinguished as to the petitioner.

PETITION, filed in the Land Court on April 12, 1920, by Erwin A. Wilson and Laforest Beals, seeking registration of the title to land in Lowell bounding westerly on Central Street and northeasterly on Hurd Street.

The petition was opposed only by Middlesex Company and by Albert E. O'Heir. O'Heir owned the property fronting on Hurd Street and adjoining that of the petitioners on the east.

The petition was heard in the Land Court by *Corbett,* J. It appeared that a large tract of land on the southerly side of Hurd Street extending from Central Street to George Street previously was owned by Middlesex Company, which conveyed lots therefrom to several persons. One of the lots was that of which the

petitioners sought registration. Another was that owned at the time of the hearing by the respondent O'Heir. Two lots of the tract were owned by Middlesex Company at the time of the hearing. Material provisions in the deeds of Middlesex Company covering these lots, and also of a deed of release in 1839 to the petitioners' predecessors in title, Mixer and Wade, are described in the opinion.

On October 27, 1873, Middlesex Company and the owner of all lots southerly of Hurd Street and between Central Street and George Street, excepting the then owner of the lot of which the petitioners sought registration in this proceeding, entered into an indenture which recited in a preamble that all the parties owned land on the southerly side of Hurd Street; that Middlesex Company, in its original conveyances of lands on the southerly side of Hurd Street to the predecessors in title of the other parties, in substance covenanted not to erect nor to permit the erection of any building on the southerly side of Hurd Street north of the northerly line of the houses as then erected; that the conveyances "were made on the express condition, in each deed in substance expressed, that no building should be erected on said southerly side of Hurd Street north of the northerly line of the houses on said southerly side as now erected," and that all the parties to the indenture desired "to acquire the right to build out six feet further toward the said southerly side of Hurd Street than they have hitherto had the legal right to do in consequence of the covenants and express conditions in" the conveyances. Then follows a release to Middlesex Company by all the other parties, their heirs, executors, administrators, successors and assigns, from all of such covenants and agreements and also from all other agreements relating to so much of the land on the southerly side of Hurd Street as projects six feet northerly of the line of the houses, and Middlesex Company thereupon covenanted and agreed that it would, upon tender by each or either of the other parties, their heirs, successors, or assigns, of the value of the land, belonging to each or either of them making such tender, which projected six feet northerly of the line of the houses, release such party's six foot strip "from the express conditions in said conveyances contained." Pursuant to such indenture, Middlesex Company gave such release to O'Heir and his predecessors in

title and to the others. Buildings accordingly were built to within twelve feet of Hurd Street by those named in the indenture and their successors in title, and such buildings were in existence at the time of the filing of the petition.

Various other owners of land on the southerly side of Hurd Street between Central and George streets had erected stone steps attached to buildings and iron railings attached to buildings within twelve feet of the southerly line of Hurd Street, which were in existence at the time of the filing of the petition.

For more than twenty years before February 5, 1920, the predecessors in title of the petitioners had maintained adversely a stone stairway on the restricted area leading to the basement or cellar of the building on the petitioners' land together with a suitable metal railing about four feet in height around the stairway, the stairway occupying a space within the restricted area twenty and one half by six feet. This stairway was below the surface of the ground and had no roof. The metal railing was four feet above the surface and was cemented into the stonework of the stairway.

In 1897 or 1898 an addition was erected to the permanent building on the petitioners' land by their predecessors in title. The addition was within the restricted area and was rectangular in shape, was covered by a roof, and was about seven feet wide by fourteen feet long, the length being adjacent to the main building on the premises, and the boundary of seven feet being at right angles thereto and twenty-five feet from Central Street. It first was used as a rathskeller or restaurant and later as a "shoe shine parlor" until 1914, when another structure, known as a lunch room, was built around and over it, occupying practically the same space, and then the original structure was removed. On February 5, 1920, Middlesex Company brought a writ of entry in the Land Court against predecessors in title to the petitioners, to recover possession of the property because of their having maintained the lunch room. The lunch room was taken down shortly before April 1, 1920, pursuant to a certain agreement dated February 26, 1920, between Middlesex Company and the petitioners. It did not appear that any one excepting Middlesex Company objected to the structure.

The judge of the Land Court in substance ruled that the pro-

vision in the deed of Middlesex Company to Mixer and Wade in 1835, in connection with the deed of 1839 and in the circumstances constituted a restriction for the benefit of such lots as were conveyed by Middlesex Company with a similar provision; that the basement stairway erected by the predecessors in title of the petitioners was not a violation of the restriction; that the indenture of 1873 and acts done in conformity therewith did not show that the scheme of restrictions established as to the lots no longer existed "in any form;" that the maintenance of the structure erected by predecessors in title of the petitioners, used for twenty years, objected to only by Middlesex Company and then removed under an agreement only with that company, "relieved the land actually occupied by it from the burden of the building restriction as against the respondent O'Heir and other owners of lots on the southerly side of Hurd Street who had rights similar to his," but did not affect rights of Middlesex Company; that therefore "so much of the petitioners' land as is included within a strip eighteen feet wide extending along Hurd Street is subject to the restriction that a building shall never be erected thereon as set forth in the" deed from Middlesex Company to Mixer and Wade dated April 20, 1839; "that the restrictive provision set forth in the deed from" Middlesex Company to Mixer and Wade dated September 1, 1835, "constitutes a restriction for the benefit of those said other lots on the southerly side of Hurd Street which were conveyed by Middlesex Company with a similar provision restricting the erection of buildings thereon, with the exception that so much of the petitioners' land as was covered by the above described structure which was erected and maintained within the restricted area for a period exceeding twenty years is no longer subject to such restriction in favor of said other lots."

A decree accordingly was ordered; and the petitioners alleged exceptions.

*A. S. Howard,* for the petitioners.

*A. C. Spalding,* for the respondent Middlesex Company.

*J. J. Hogan & W. A. Hogan,* for the respondent O'Heir, submitted a brief.

DE COURCY, J.  This is a petition to the Land Court for registration of the title to a parcel of land situated at the corner of Central and Hurd streets in Lowell.  The question raised by the

exceptions is whether the title should be registered free from certain conditions or restrictions originally imposed thereon.

The land in question, which abuts on the southerly side of Hurd Street, and is a portion of the premises described in the petition, was formerly part of a large tract owned by the respondent Middlesex Company. It was conveyed on September 1, 1835, by said company to John Mixer and John Wade, Jr., predecessors in title of the petitioners, by a deed which contained the following: "But this conveyance is made on the express condition that no building shall ever be erected on the above described premises nearer Hurd Street than the line of the fronts of the other buildings on the south side of Hurd Street." The parties have agreed that at the date of this deed the front line of said buildings was about eighteen feet from the southerly line of Hurd Street. By a deed dated April 20, 1839, the Middlesex Company conveyed to said Mixer and Wade (in addition to other rights not here in question) all the grantor's right, title and interest in said eighteen foot strip bounded northerly by Hurd Street. After the description of this strip appears the following language: "said Mixer and Wade their heirs and assigns shall forever have the right to use and improve said last described piece of land as a garden or yard or passage way over which to pass and repass to and from their said premises & said Hurd street with the privileges thereto belonging and the right to enclose the same with a fence out as far on Hurd street as as [*sic*] the northerly line of the front of the fence now standing in front of Jesse Fox house provided however that said Mixer and Wade shall never erect any building thereon, and said Mixer and Wade their heirs & assigns shall forever have an easement in and over said Hurd street."

It is set forth in the agreed facts that "every lot on the southerly side of Hurd Street between Central Street and George Street, except the lots now owned by the Middlesex Company, was originally conveyed by the Middlesex Company by deeds containing the same or a similar provision to that contained in the original deed from the Middlesex Company to Mixer and Wade, dated September 1, 1835;" and that "the Middlesex Company is now the owner of two lots on the southerly side of Hurd Street between Central and George Streets."

On the foregoing facts the petitioners contend that the pro-

visions in said deeds of September 1, 1835, and April 20, 1839, created a common law condition, with a right of reverter in the Middlesex Company if Mixer and Wade, but not their successors in title, should erect any buildings thereon. So far as the first deed is concerned, it was ruled by the Land Court, apparently on the agreement of all parties, that its language created a common law condition. The court ruled, however, that while said release of the eighteen foot strip had the effect of terminating the company's right to enter upon any part of the land first conveyed for a breach of said condition, it did not create a new common law condition limited to Mixer and Wade and not extending to their heirs and assigns, but that the provision in the later deed that no building should be erected on said strip must be construed as creating an equitable restriction thereon in favor of the company; and that it also constitutes a restriction for the benefit of such lots on Hurd Street as were conveyed by said company with similar provision.

As to the Middlesex Company: The words in the deed of 1835, taken by themselves, were undoubtedly sufficient to create a condition as between the grantor and grantees. *Clapp* v. *Wilder*, 176 Mass. 332. See *Welch* v. *Austin*, 187 Mass. 256, 258. But when they are considered in connection with the language in the release of 1839, and in the light of the attendant circumstances, there appears ample warrant for the conclusion of the Land Court, that the intent of the parties was to create an equitable restriction and not an estate upon condition. In *Whitney* v. *Union Railway*, 11 Gray, 359, there was a provision that if the grantee, his heirs or assigns, should make any of specified objectionable uses of the premises the grantor or her successors in title might enter and abate the same; and it was held to create an equitable restriction. In *Skinner* v. *Shepard*, 130 Mass. 180, the conveyance was "subject to the condition" that a certain building line be maintained: and it was construed as having effect only as a restriction. And in *Codman* v. *Bradley*, 201 Mass. 361, where the language was in terms of a covenant by the grantees, the court said (page 368): "It is not important to determine whether the instrument created a legal estate in the five lots, or precisely what legal estate it created, if any. It created a right enforceable in equity . . . in the nature of an easement, even if it rests on no broader principle

than that equity will enforce a proper contract concerning land, against all persons taking with notice of it." See also *Wilson* v. *Massachusetts Institute of Technology*, 188 Mass. 565, 581.

As to the respondent O'Heir: Apart from the question whether the 1835 deed created a technical condition as between the Middlesex Company and Mixer and Wade, and the effect of the release of 1839 on the rights of that company, the Land Court was fully warranted in finding on the evidence that the restrictions were designed to carry out a general scheme of improvements for the benefit of the several lots conveyed by the company on the southerly side of Hurd Street, and that O'Heir consequently has a right or interest in the nature of a servitude in the petitioners' lot which was conveyed subject to the restriction. *Parker* v. *Nightingale*, 6 Allen, 341. *Hano* v. *Bigelow*, 155 Mass. 341. *Hopkins* v. *Smith*, 162 Mass. 444. *Allen* v. *Barrett*, 213 Mass. 36.

The petitioners further contend that even if the deeds created an equitable restriction only, it was extinguished wholly or *pro tanto* by the use made by the petitioners of the restricted area. The stone stairway leading to the cellar of the building on the petitioners' land, with a metal railing four feet above the surface, was not such a "building" as was prohibited on the restricted area. *Nowell* v. *Boston Academy of Notre Dame*, 130 Mass. 209. And even if its maintenance were a breach of the restrictive provision, the effect at most would be to extinguish that provision only to the extent that the stairway and railing had invaded it. *Putnam* v. *Bowker*, 11 Cush. 542. It would still remain effective to require a setback of the buildings on Hurd Street, as contemplated in the plan of development of the Middlesex Company. And this equitable restriction was for the benefit not only of the remaining lots of Middlesex Company, but also to secure the advantages of light, air and prospect to the purchasers of other lots for whose benefit the general scheme of restrictions existed, as found by the Land Court. Again the addition to the permanent building of the petitioners, which was used as a lunch room and for other purposes, and was within the restricted area, was removed in 1920 in pursuance of the written agreement between the petitioners and the Middlesex Company, after the company had brought a writ of entry to recover possession of the property because of the erection of said addition. While the maintenance of said structure for more

than twenty years affected the rights of the respondent O'Heir, the purpose and effect of said agreement was to leave the petitioners and the Middlesex Company in the same position as they were in before the structure was erected. *Putnam* v. *Bowker, supra. Ball* v. *Allen,* 216 Mass. 469. It cannot be ruled as matter of law that such encroachment of this seven by fourteen feet area was inconsistent with the existence of the restriction, as in *Smith* v. *Price,* 214 Mass. 298. And the further contention of the petitioners, that the restriction in question was extinguished by the indenture of October 27, 1873, and the releases given in pursuance thereof, cannot prevail. By these instruments a strip of land six feet wide, and next northerly of the original house front line, was released from the prohibition against building thereon. The petitioners or their predecessors in title were not parties to said indenture. As stated by the Land Court: "it is impossible for this court to say that the scheme of restrictions so far as the petitioners' land is 'concerned no longer exists in any form. *McArthur* v. *Hood Rubber Co.* 221 Mass. 372. *Riverbank Improvement Co.* v. *Chadwick,* 228 Mass. 242."

Accordingly we find no error in the rulings that the eighteen foot strip of the petitioners' land, adjoining Hurd Street, is subject to the restriction that a building shall never be erected thereon, as set forth in said deed to Mixer and Wade, dated April, 1839; and that the restrictive provision in the deed of September 1, 1835, "constitutes a restriction for the benefit of those said other lots on the southerly side of Hurd Street which were conveyed by the Middlesex Company with a similar provision restricting the erection of buildings thereon with the exception that so much of the petitioners' land as was covered by the above described structure which was erected and maintained within the restricted area for a period exceeding twenty years is no. longer subject to such restriction in favor of said other lots."

The foregoing disposes of all the exceptions argued by the petitioners.

*Exceptions overruled.*