SAMUEL SMALL & another *vs.* PARKWAY AUTO SUPPLIES, INC.

Norfolk.   October 21, 1926. — December 13, 1926.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Equitable Servitude.   Deed,* Construction.   *Park and Parkway.   Words,* "Building."

A provision in a taking of the Blue Hills Parkway in Milton by the board of park commissioners, and in deeds of property adjoining the parkway, that "no buildings of any kind shall be erected or maintained upon or over any" of the restricted area which covered a space twenty feet in width from the side line of the parkway, is not violated by the erection within that area of two gasoline pumps for selling gasoline to the public, a large underground gasoline tank, and a pit, lined with concrete and enclosed by a concrete ramp about six inches high, so

constructed that automobiles could be run to a position immediately above the pit and workmen could stand erect while filling crank cases with oil and doing other work beneath such automobiles; such structures not being a building or "buildings."

BILL IN EQUITY, filed in the Superior Court on July 27, 1925, and afterwards amended. The amended bill is described in the opinion.

The suit was heard by *Lummus*, J. Material findings by him are stated in the opinion. By his order, the bill was dismissed. The plaintiffs appealed.

*J. W. Tushins*, (*D. Stahl* with him,) for the plaintiffs.

*G. W. Reed*, for the defendant.

SANDERSON, J. This is a suit in equity in which the plaintiffs, as owners of the premises numbered 75 Blue Hills Parkway, Milton, seek to enjoin the defendant corporation, which owns and operates a gas and automobile supply station on the adjoining premises, from conducting the business in violation of restrictions, set forth in a taking by the board of metropolitan park commissioners on behalf of the Commonwealth of Massachusetts and in a deed of one Bartlett a common grantor; and they further seek an order for the removal of two pumps, a gasoline tank, and a concrete structure hereinafter described, which are alleged to encroach within the restricted area. The bill also contains a prayer for damages.

The park commissioners in the order of taking, after stating that they deemed "it desirable and expedient to provide for a setback and prescribe a building line and to impose building restrictions upon lands adjacent to said parkway or boulevard," took in the name of the Commonwealth of Massachusetts and for the benefit of the Commonwealth and its inhabitants all such rights as may be necessary to give full effect to the restriction that "no buildings of any kind shall be erected or maintained upon or over any" of the restricted area which covered a space twenty feet in width from the side line of the parkway. The deed from Bartlett to the Commonwealth provided that "No building or part thereof shall be erected, placed or maintained upon said premises within twenty five feet

from the exterior line of said parkway; provided however, that the steps to it may project into said reserved space. The restrictions above set forth shall continue in force so long as such roadway and walk shall be maintained by said Commonwealth of Massachusetts, and the grantor, his heirs and assigns, owners or occupants of grantor's now adjoining lands, shall have free access thereto and liberty to use the same for the purposes of a way, subject to the rules and regulations aforesaid." The roadway and walk are still maintained by the Commonwealth. All the deeds relative to the property in question, from the time of the original taking to the conveyances to the parties in this suit, referred to the restrictions, and the conveyances were made subject thereto.

The trial judge found that the pumps, tanks and concrete structure complained of are within the restricted space; that prior to the time when the plaintiff Samuel Small acquired title, but one gasoline pump was there; that in the spring of 1925 changes were made by the defendant, whereby the then existing pump was moved to a point nearer the plaintiffs' property, a second gasoline pump was installed within the restricted area, and a larger underground gasoline tank was substituted for one of the two preëxisting underground tanks; that at the same time, a pit was dug near the plaintiffs' land, lined with concrete, and enclosed by a concrete ramp about six inches high so constructed that automobiles could be run to a position immediately above the pit and workmen could stand erect while filling crank cases with oil and doing other work beneath such automobiles. The pumps referred to have a concrete base two or three feet in diameter, projecting about six inches above the surface of the ground. They are circular or elliptical in shape, about eighteen inches in diameter, and rise from the concrete base to a height of about eight feet. From a point near the top extends an arm or pipe three or four feet long, to which is attached a hose for filling automobiles with gasoline. The trial judge further found that the installation of the more southerly pump and the concrete pit was a substantial detriment to the plaintiffs' land as compared

with the conditions existing prior thereto; and that the plaintiffs seasonably objected to the changes made in the spring of 1925. He found that none of the structures above ground or underground within the twenty-five foot strip is a building within the meaning of the restrictions. A final decree dismissing the bill was entered from which the plaintiffs appealed.

A covered coal bin, raised three feet above the level of the surrounding land, was held to be in violation of the terms of an indenture, and so much as "rises above the usual line of the reserved spaces in front of the houses" was ordered removed in *Attorney General* v. *Gardiner*, 117 Mass. 492, 499, 500. In that case the court said "The indenture expressly stipulates that no part of any building shall be within the distance of twenty feet from the front line of the lots, with a proviso allowing the erection, within the reserved space, of nothing but fences on the front line of the lots, and 'steps and other usual projections' from the fronts of the buildings."

The word "building" in its ordinary sense denotes "a structure or edifice enclosing a space within its walls and usually covered with a roof, such as a house, a church, a shop, a barn or a shed." *Nowell* v. *Boston Academy of Notre Dame*, 130 Mass. 209, 210. That case held that a brick wall six feet in height with a coping on the wall not exceeding one foot in height was not a building within the meaning of the restriction in the deed then under consideration.

In *Reardon* v. *Murphy*, 163 Mass. 501, it was held that a piazza covered by its own roof attached to the front of a house, the front line of which is twenty feet from the street, is a building within the terms of the restriction that no building shall be placed at a less distance than twenty feet from the street.

In *Wilson* v. *Middlesex Co.* 244 Mass. 224, 231, it was decided that an uncovered stone stairway twenty and one half feet by six feet, leading below the surface of the ground to a basement, having around it above ground a metal railing four feet high cemented into the stone work of the

stairway, was not a "building" within the meaning of that term in a restrictive clause in the deed.

Under St. 1851, c. 343, which provided for the establishment of a lien for labor performed in erecting, altering or repairing a building, it was held that the wall built around three sides of the stack of an iron furnace and a few feet from it to protect it from earth which might otherwise slide down, was not a building. The court, speaking through Bigelow, J., said: "The word 'building' cannot be held to include every species of erection on land, such as fences, gates or other like structures. Taken in its broadest sense, it can mean only an erection intended for use and occupation as a habitation or for some purpose of trade, manufacture, ornament or use, constituting a fabric or edifice, such as a house, a store, a church, a shed. That the word building was used in this sense in the statutes above cited, and did not comprehend every species of erection on land, is strongly implied by St. 1855, c. 431, in which the word 'structure' is added to the word 'building,' in giving a lien for labor and materials." *Truesdell* v. *Gay*, 13 Gray, 311, 312.

It is assumed that one of the purposes of the metropolitan park commissioners in prescribing a building line and making building restrictions was to establish for the benefit of the Commonwealth and its inhabitants a wide and beautiful way, but it also must be assumed that they and the grantor Bartlett, in using the word "building," were familiar with the decisions of this court as to the meaning of that word when used in restrictive clauses of deeds, and that if they had intended to prohibit the construction of anything in or upon the restricted area, apt words to that end would have been used.

We are of opinion that none of the structures described is a building within the meaning of that word in the restrictions. The conclusion here reached makes it unnecessary to consider other questions argued.

*Decree affirmed with costs.*