Argued September 6, affirmed December 12, 1962

# SCHOOL BOARD OF SCHOOL DISTRICT NO. U2-20 JT., MULTNOMAH COUNTY *v.* FANNING

377 P. 2d 4

*Howard A. Rankin*, Portland, argued the cause for appellant. With him on the brief were Shuler, Sayre, Winfree & Rankin, and Michael J. Walsh, Portland.

*A. W. Gustafson*, Gresham, argued the cause for respondent. With him on the brief were McAllister, Burns & Gustafson.

Before ROSSMAN, J., Presiding, and PERRY, SLOAN, O'CONNELL, GOODWIN, LUSK and DENECKE, Justices.

O'CONNELL, J.

This is a declaratory judgment suit to determine the authority of plaintiff school district to issue bonds for the construction of swimming pools at two of its high schools. Defendant is a voter, freeholder, and taxpayer in the school district. The only issue on appeal is whether ORS 328.205 (1), which authorizes school districts to issue bonds for the construction of school buildings, is to be interpreted as authorizing the issuance of bonds for the construction of an enclosed swimming pool.

The trial court held that ORS 328.205 (1) grants such authority. Defendant appeals. ORS 328.205 (1) provides as follows:

"(1) School districts may contract a bonded

indebtedness for the purpose of providing funds with which to acquire, to construct, to reconstruct, to improve, to repair, to equip, to furnish a school building or school buildings or additions thereto and to acquire all property, real and personal, appurtenant thereto or connected therewith, including school busses, or to fund or refund outstanding indebtedness, or for any one or combination of two or more of such purposes, and to provide for the payment of the debt."

Defendant concedes that a school district has the authority to construct swimming pools for the purpose of carrying out a part of its educational program. This authority is derived from ORS 332.380 (1) which empowers the district among other things to "build schoolhouses, including high schools, junior high schools, vocational schools, technical schools, gymnasiums, houses for teachers and other employes and like buildings * * *."

However, it is defendant's position that the authority to contract bonded indebtedness is not coextensive with the general power granted to the district to construct various school facilities. Defendant argues that only "school buildings" may be financed through the issuance of bonds, although the district may construct buildings of various types by the expenditure of money raised through taxation. It is contended that a swimming pool is not a "school building" within the meaning of ORS 328.205 (1).

The swimming pools proposed to be constructed in the present case were so-called "enclosed" pools, i.e., the pool proper was to be built as a part of a covered structure. Therefore, the pool is a part of a "building." Moreover, the building was a necessary part of the pool in view of its proposed use during a part of the

school year when weather conditions would make it necessary to carry on instruction indoors. Therefore, even if the term "building" were given its narrowest meaning, as consisting of "a structure which encloses space for a useful purpose,"[1] the proposed swimming pool facilities in the instant case would fall within the definition.

■■ The question then is whether the building proposed in this case is one which can be characterized as a *school* building" within the meaning of ORS 328.205 (1). A building is a "school building" if it is designed to carry out a part of the instructional program authorized by the district. The plaintiff school district adopted instruction in swimming as a part of its educational program. It had authority to do so and it had authority under ORS 332.380 (1) to construct a building to carry out that program.[2]

■ We construe ORS 328.205 (1) as including the authority to issue bonds for the construction of buildings authorized under ORS 332.380 (1). It will be noted that this section includes "gymnasiums" among other types of buildings, and that the section further authorizes the construction of "like buildings." This means that the district is authorized to construct buildings which are designed to serve "like" purposes. A swimming pool which is to be used to carry out a part of a physical education program would serve a purpose similar to that served by a gymnasium. The swimming pool's construction may be financed by the issuance of bonds since it is a building and since it is authorized under ORS 332.380 (1).

---

[1] Board of Education of Louisville v. Williams, 256 SW2d 29, 30 (Ky 1953). See, Small v. Parkway Auto Supplies, 258 Mass 30, 154 NE 521, 49 ALR 1361 (1926); Webster's New International Dictionary 351 (2d ed 1961).

[2] See, ORS 332.340.

We have taken note of the fact that the swimming pool was "enclosed." However, we do not regard this fact as essential to bring a school swimming pool within ORS 332.380 (1) and thus within ORS 328.205 (1). Admittedly, ORS 328.205 (1) does not empower the school district to issue bonds for all authorized school district purposes. Bond financing is permissible only in connection with the acquisition, construction, repair, etc. of school *buildings*. What does the term school building mean as it is used in this statute? In common parlance the word "building" is used to denote a structure having walls and a roof.[9] The word has also been used to describe structures which do not have these characteristics.[10] Words are but the vehicle of thought. They have meaning only

---

[9] Small v. Parkway Auto Supplies, 258 Mass 30, 154 NE 521, 49 ALR 1361 (1926).

[10] The following structures were held to be buildings in the contexts noted: Alexander v. Phillips, 31 Ariz 503, 254 P 1056, 52 ALR 244 (1927) (football stadium is a "building which is appropriated for use of a school or schools" and therefore is a "schoolhouse"—bond authorization statute); Nichols v. Calhoun, 204 Miss 291, 37 So2d 313 (1948) (school stadium—statute authorizing bonds); Evans v. Mary A. Riddle Co., 43 A 894 (NJ Ct of App 1899) (boardwalk photograph gallery open on two sides—restrictive covenant); Buck v. Adams, 45 NJ Eq 552, 17 A 961 (1889) (pavilion consisting of a frame structure open on all sides covered by a roof—restrictive covenant); Wright v. Evans, 2 Abb Pr (n.s.) 308 (NY 1867) (20-foot fence—restrictive covenant); MacGregor v. Linney, 27 Ohio C C R 490 (1905) (8-foot board fence—restrictive covenant); Long Eaton Recreation Co. v. Midland Railway Co., [1902] 2 K B 574 (railway embankment—restrictive covenant). *Contra*, Middlesex Theatre v. Commissioner of State Police, 28 Conn 20, 20 A2d 412 (1941) (open air theatre—building code capacity provision); Board of Education of Louisville v. Williams, supra (high school stadium—bond authorization statute); Deary v. Town of Dudley, (Mass) 178 NE2d 83, 85 (1961) (sewer—competitive bidding statute); Small v. Parkway Auto Supplies, supra (underground concrete pit used to empty crankcases—restrictive covenant); Clark v. Lee, 185 Mass 223, 70 NE 47 (1904) (wall—restrictive covenant); Weiss v. Home Insurance Co., 9 App Div2d 598, 189 NYS 2d 355 (1959) (dock-insurance policy).

in the context in which they are used. The meaning of the term "school building" as used in ORS 328.205 (1) is to be ascertained in light of the purpose which that section was intended to serve. The purpose is not expressed in the statute. Therefore, it is our duty to derive that purpose by interpretation; i.e., we must decide what the legislature would have intended had it considered the matter.

■■ We believe that it was the legislative purpose to empower the issuance of bonds by school districts for the erection on school lands of any structure which the district was authorized to construct and which it deemed necessary or desirable in carrying out its educational program. The statute reflects the intent to make the function of the structure rather than its architectural design the criterion in determining whether bonds may be issued. The statute authorizes the issuance of bonds not only for the purpose of financing the construction of buildings but also "to equip" them and to acquire personal property as well as real property "appurtenant thereto or connected therewith, including school busses." Thus it is clear that the authorization for bonding is not limited to the construction of buildings in the narrow sense, but includes other purposes which are related to the functioning of the school plant on the land devoted to school purposes. One of these functions is to provide physical education and training for the students. The construction of facilities upon the land necessary to carry out this function is authorized whether it is surrounded by walls and covered by a roof or unenclosed.

The judgment of the lower court is affirmed.