COMMONWEALTH *vs.* KENNETH ANDERSON, JR.
(and a companion case[1]).

No. 94-P-233.

Norfolk. October 19, 1994. - July 12, 1995.

Present: ARMSTRONG, DREBEN, & GREENBERG, JJ.

*Malicious Injury to Property. Statute*, Construction. *Words*, "Building."

A railroad trestle is not a "building" for purposes of a prosecution for wilful and malicious destruction of property under G. L. c. 266, § 127. [710-713]

INDICTMENTS found and returned in the Superior Court Department on September 11, 1991.

Motions for leave to withdraw a guilty plea and for post-conviction relief were heard by *John Paul Sullivan*, J.

*Robert C. Cosgrove*, Assistant District Attorney, for the Commonwealth.

*Ronald W. Rice* for Kenneth Anderson, Jr.

*Julieann Hernon* (*Nona E. Walker*, Committee for Public Counsel Services, with her) for Donald Pilkington, Jr.

GREENBERG, J. A Norfolk County grand jury returned indictments of the defendants charging each of them with a single count of a civil rights violation (G. L. c. 265, § 39) and with the wilful and malicious destruction of property (G. L. c. 266, § 127).[2] A motion to dismiss the two indictments charging the civil rights violation was allowed by a Superior Court judge on February 20, 1992. The government

---

[1]Commonwealth *vs.* Donald Pilkington, Jr.

[2]Prior to trial, the judge granted the defendants' motion for a bill of particulars which pertained to all of the indictments. The government filed a bill of particulars which described the offending conduct as "using black spray paint" to paint a "railway trestle" in the town of Medway.

filed no appeal from the dismissal of those charges, and that matter is not relevant to the appeals.

Upon a motion for relief from prejudicial joinder, a separate trial of each defendant on the remaining charges was granted. Just after opening statements, the judge accepted the defendant Anderson's plea of guilty to the crime of wilful and malicious destruction of property. Trial proceeded in the defendant Pilkington's case. At the close of the government's evidence, and again at the completion of all testimony, Pilkington moved for a required finding of not guilty. Both motions were denied, and at the end the judge submitted the case to the jury. The jury brought in a verdict of guilty on April 7, 1992.

Next, the defendant Pilkington filed a motion for postconviction relief pursuant to Mass.R.Crim.P. 25(b)(2), 378 Mass. 896 (1979). That motion, for the first time, raised the issue that forms the sole basis of both appeals; whether a railroad trestle as matter of law is a "building" within the meaning of G. L. c. 266, § 127.[3]

On April 28, 1992, the judge ruled against the government. He vacated the verdict in the defendant Pilkington's case and allowed the defendant Anderson's motion to withdraw his guilty plea. Both indictments were dismissed. The government appeals from the dismissal of the indictments.

We relate a condensed account of the case, which will provide background for the points of law.

As proof of its charge that the defendants violated G. L. c. 266, § 127, the government offered the undisputed testimony of a police officer of the town of Medway. Just before 7:00 A.M. on July 4, 1991, he observed a stone wall that once supported one end of a railroad bridge or trestle. It was sprayed with black painted graffiti. Scrawled on the rough surface of the wall were the words "skins rule," "white power," and the letters "WYL" standing for White Youth League. Another embellishment included a swastika. Owned by the town, the remnants of the bridge were located on a public way at the

---

[3]The defendant Anderson joined in the posttrial motion prior to the time of his sentencing hearing.

intersection of Village and Cottage Streets. A racially diverse population lived in the area, including African-American and Jewish families. Nearby were several churches, a temple, and an elementary school.

The officer's investigation led him to the defendant Pilkington, who admitted that he was the graffitist. He named the defendant Anderson as an accomplice.

At his trial, Pilkington took credit for targeting the wall for inscription. Upon cross-examination, he admitted that his conduct was without consent of any town official and that someone would have to pay for removal of the graffiti.

In the main, Pilkington's testimony at the trial, if believed, tended to show that his actions were not malicious or activated by cruelty, hostility, or revenge. See *Commonwealth v. Cimino*, 34 Mass. App. Ct. 925, 927 (1993). He did not dispute the government's version of what was done to the trestle.

Prior to July, 1994, which was the effective date of G. L. c. 266, § 126A, inserted by St. 1994, c. 60, § 174,[4] the government's prosecution of "hate crimes," under the Massachusetts civil rights statute,[5] see G. L. c. 265, § 39, required

---

[4]Section 126A makes painting, marking, scratching or etching or otherwise defacing the real or personal property of another punishable by imprisonment in a State prison for a term of not more than three years or by imprisonment in a house of correction for not more than two years, or by a fine of not more than fifteen hundred dollars or not more than three times the value of the property damaged or destroyed, whichever is greater. It also contains provisions for any person convicted to have his operator's license suspended for one year, and be required to remove the graffiti or pay for its removal.

[5]A useful definition of a bias or hate crime is "a crime in which the defendant's conduct was motivated by hatred, bias, or prejudice, based on the actual or perceived race, color, religion, national origin, ethnicity, gender, or sexual orientation of another individual or group of individuals." H.R. 4797, 102d Cong., 2d Sess. (1992).

Hate speech laws criminalize the actual utterance of a racist or other bigoted statement or the commission of a bigoted act substantially equivalent to speech. By contrast, hate crime laws enhance the penalty of criminal conduct when it is motivated by racial hatred or bigotry. For an excellent explanation of the difference between hate speech, or "pure bias crimes," laws, and hate crime, or "penalty enhancement," statutes, see Lawrence, Resolving the Hate Crimes/Hate Speech Paradox: Punishing

proof of "intimidation" because of the owner's race, color, religion, or national origin. In the cases at bar, after the dismissal of the civil rights indictments, the government was relegated to proceeding against the defendants on the remaining indictments under G. L. c. 266, § 127. That statute, as appearing in St. 1978, c. 544, contains an enhanced penalty for destruction or injury to "the personal property, dwelling house or *building* of another . . . if such destruction is wilful or malicious"[6] (emphasis added).

We conclude that the defendants' conduct in these cases, no matter how reprehensible, is not encompassed by § 127. Despite the absence from the statute of a definition of the word "building," the government contends, on appeal, that the statute is applicable to "injury" to a railroad trestle. To buttress the argument the government claims that the definition of "building" inherently includes, among other things, "a thing built: . . . a constructed edifice designed to stand more or less permanently, covering a space of land." Webster's Third Intl. Dictionary 292 (1986).[7] As so defined, the government equates a railroad trestle with the remnants of a building. The argument is without any merit. "[A] statute should be construed in a fashion which promotes its purpose and renders it an effectual piece of legislation in harmony with common sense and sound reason." *Worcester Vocational Teachers Assn.* v. *Worcester*, 13 Mass. App. Ct. 1, 7-8 (1982).

---

Bias Crimes and Protecting Racist Speech, 68 Notre Dame L. Rev. 673, 682, 695-698 (1993).

[6]General Laws c. 266, § 127, provides for a prison sentence up to ten years, or in its place, a fine up to $3,000 or three times the value of the property injured, plus a jail sentence of up to two and one-half years. The penalties are lower for the wanton damage of property, and for damage to property worth less than $250.

[7]A fuller definition which the government fails to provide is as follows: "a constructed edifice designed to stand more or less permanently, covering a space of land, usu[ally] covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure — distinguished from structures not designed for occupancy (as fences or monuments) . . . ."

We need not resort to dictionary definitions to conclude that the statute does not apply to the defendants' conduct. Textual cross-reference confirms this conclusion. Defacing public or private objects is prohibited by the preceding section of the statute. See G. L. c. 266, § 126, as amended by St. 1965, c. 482. In pertinent part, § 126 states, "[w]hoever paints, or puts upon, or in any manner affixes to any fence, structure, pole, rock or other object . . . within or without the limits of the highway, any words . . . shall be punished." The defendants may still be charged under this section. We may speculate that the government preferred to prosecute the defendants under § 127 because of the enhanced penalties and the lack of a strong anti-graffiti statute. However, testimony only as to the painting of graffiti on the railroad trestle does not give rise to any indication that the defendants transgressed that section. See *Commonwealth* v. *Gonzales*, 33 Mass. App. Ct. 728, 729-730 (1992).

The government argues that we should construe the word "building" in its broadest sense to include almost any kind of structure. Assuming such a construction possible after applying the rule that interpretive doubt is to be resolved in the accused's favor, *Commonwealth* v. *Clinton*, 374 Mass. 719, 721 (1978), and cases cited, there are two insurmountable obstacles. First, we adhere to a basic tenet of statutory construction that gives words plain meaning in light of legislative intent and, when a statute appears not to provide for an eventuality, there is no justification for judicial legislation. *Commonwealth* v. *Vickey*, 381 Mass. 762, 767 (1980). Second, in construing a statute, words are to be accorded their ordinary meaning and approved usage. *Hashimi* v. *Kalil*, 388 Mass. 607, 609 (1983). In its most mundane meaning the word "building" does not encompass a structure such as a trestle.

In a final attempt to justify the defendants' prosecution under § 127, the government, in its brief, relies upon a number of decisions from other jurisdictions which suggest that a "building" embraces all useful structures on land. Most of these cases arise in a civil context, as do the several vener-

able Massachusetts cases on the point. See *Nowell* v. *Boston Academy of Notre Dame*, 130 Mass. 209, 210 (1881); *Small* v. *Parkway Auto Supplies, Inc.*, 258 Mass. 30, 33 (1926). Once again, we find the suggestion implausible in the circumstances here. The decided cases do not support the point. In *Pratt* v. *Boston*, 396 Mass. 37, 47 (1985), the court ruled that a concert stage with an awning type roof and an adjoining covered platform was not a building within the meaning of G. L. c. 45, § 7. Referring to the earlier cases, the court held that "[t]he word 'building' cannot be held to include every species of erection on land." 396 Mass. at 48, quoting from *Truesdell* v. *Gay*, 13 Gray 311, 312 (1859). Several civil cases construe the word "building" quite narrowly. See *Clark* v. *Lee*, 185 Mass. 223, 225 (1904); *Small* v. *Parkway Auto Supplies, Inc.*, 258 Mass. at 33; *Pratt* v. *Boston, supra*. The words of a statute "cannot be stretched beyond their fair meaning in order to relieve against what may appear to be a hard case." *Grove Hall Sav. Bank* v. *Dedham*, 284 Mass. 92, 96 (1933).

As noted above, based on the insufficiency of the evidence, the judge dismissed the indictments.[8] The appropriate disposition in the circumstances was to allow the motions for required findings of not guilty under Mass.R.Civ.P. 25, 378 Mass. 896 (1979). See and compare *Rosenberg* v. *Commonwealth*, 372 Mass. 59 (1977); *Commonwealth* v. *Clark*, 393 Mass. 361 (1984); *Commonwealth* v. *Chay Giang*, 402 Mass. 604, 607-608 (1988). Accordingly, we affirm the order vacating the guilty verdict against the defendant Pilkington and the order allowing the defendant Anderson to withdraw his

---

[8]The prosecutor was mistaken when he asserted that the Commonwealth would not be able to appeal from the entry of a required finding of not guilty. Under Mass.R.Crim.P. 25(c)(1), as amended, 389 Mass. 1107 (1983), "[t]he Commonwealth shall have the right to appeal to the appropriate appellate court a decision of a judge granting relief under the provisions of subdivisions (b)(1) and (2) of this rule on a motion for required finding of not guilty after the jury has returned a verdict of guilty or on an order for the entry of a finding of guilt of any offense included in the offense charged in the indictment or complaint." See *Commonwealth* v. *Torres*, 24 Mass. App. Ct. 317, 321 (1987).

plea of guilty, and direct that findings of not guilty be entered in favor of both defendants.

*So ordered.*