COMMONWEALTH vs. AUBREY BARNETTE.

No. 97-P-1477.

Middlesex. May 4, 1998. - September 22, 1998.

Present: KASS, GILLERMAN, & LENK, JJ.

*Assault or Battery for the Purpose of Intimidation. Threatening. Practice, Criminal, Instructions to jury, Required finding, New trial. Words, "Intimidation," "Hate crime."*

At the trial of two counts of assault or battery for the purpose of intimidation, G. L. c. 265, § 39, there was ample evidence that the defendant assaulted the victims with the intent to intimidate them because of their national origin. [489-491]

Discussion of the nature of the intimidation element the Commonwealth must prove to warrant conviction of a violation of G. L. c. 265, § 39, assault or battery for the purpose of intimidation. [490-491]

At the trial of two counts of assault or battery for the purpose of intimidation, the judge's instructions on intent were adequate, and his failure to instruct the jury on specific intent did not create a substantial risk of a miscarriage of justice. [491-492]

At a criminal trial, no substantial risk of a miscarriage of justice was created by the judge's failure to instruct the jury on voluntary intoxication, where the evidence did not warrant such an instruction. [492-493]

A criminal defendant did not demonstrate that his counsel had rendered ineffective assistance at trial. [493-494]

COMPLAINT received and sworn to in the Concord Division of the District Court Department on February 12, 1996.

The case was tried before *Paul L. McGill*, J., and a motion for a new trial was heard by him.

*Jon R. Maddox* for the defendant.

*Abra C. Siegel*, Assistant District Attorney, for the Commonwealth.

LENK, J. This case arises out of an altercation between next door neighbors in Lexington. The victims, Maria Acuna and her son Israel Rodriguez, are Mexican-American. The defendant is predominately African-American. During the incident, the

defendant allegedly threatened to kill Acuna and Rodriguez, calling them, among other things, "damn Mexicans" and telling them to "Get out of here." After trial, a jury convicted the defendant of two counts of assault or battery for the purpose of intimidation, G. L. c. 265, § 39, and two counts of threatening to commit a crime, G. L. c. 275, § 2.[1] On appeal, the defendant contends that the trial judge erred in (1) denying the defendant's motion for a required finding of not guilty on the two counts of assault or battery for the purpose of intimidation; (2) improperly instructing the jury on intent; and (3) denying the defendant's motion for new trial on the grounds of ineffective assistance of counsel. We affirm.

*Facts.* Taking the facts in the light most favorable to the Commonwealth, the incident unfolded as follows. In the early evening of September 21, 1995, Maria Acuna (Acuna) was working at her computer on the second floor of her home in Lexington, where she had been living with her son, Israel Rodriguez (Rodriguez), since May, 1995. The defendant was next door at his sister's house babysitting his niece. Acuna heard a loud noise, like someone banging or shaking a wooden fence, looked out her window, and saw the defendant trying to enter her back yard to retrieve his niece's ball. Concerned that the defendant was going to break her fence, Acuna called through the window to the defendant to please not trespass, and that she would come downstairs to help him out.

The defendant shouted, "You bitch, I just came to pick up my ball." Acuna went downstairs and walked into her backyard, and observed that the defendant had entered her yard, and was turning to leave. As the defendant left her yard, he repeatedly called her a "bitch" and told her that she could keep the ball the next time. Acuna walked towards the fence to latch the gate and the defendant said: "You bitch. You don't fit here. What are you doing here, you damn Mexican. Why don't you go back to your country? All of you come and get our jobs and our houses. Get out of here. You don't fit here. I'll kill you and your son."[2]

While standing next to the fence shouting at Acuna, the

---

[1]The defendant was also convicted of two counts of assault and battery, G. L. c. 265, § 13A, which the judge ruled were duplicative.

[2]The defendant's tirade continued in the same vein: "I am a black man. I have been living here for seven years. I can go inside your house or anyplace I want to. Because nobody will stop me, you bitch, and I will kill you if you say something. Why don't you just go back to your country? Why don't you

defendant thrust his fist towards her face so that she "could almost feel the hit of his fist" in her nose and face. The defendant then threw his fingers in a forking motion toward her, coming to within an inch of her eyes. The defendant was yelling at Acuna so loudly that Rodriguez awoke from his nap and came outside to the backyard. Rodriguez testified that he could hear the defendant shouting "fuck," "shit," and "Mexican," "Get the hell out of the country," "You don't belong here," and "Mexicans don't belong here" at his mother. He pulled his mother away from the fence and demanded to know from the defendant what was going on. The defendant now attempted to hit Rodriguez with his fists, from the other side of the fence, rattling the gate, trying to enter the backyard, and saying: "You little shit. Come up here. I'm going to take the fucking shit out of you and your mother together. I will beat you both to death." The defendant continued saying, "Damn Mexicans. What are you doing here?" Acuna and Rodriguez both testified that they felt afraid and threatened by the defendant's rage and determination to hit them.

At the time of the incident, the defendant's neighbor, Michael Townes, was barbecuing in his backyard, approximately twenty feet away. Townes heard the defendant yell at Acuna and Rodriguez "You should go back to where you're from," and refer to "whupping" Rodriguez's ass. Townes came over and, smelling alcohol on the defendant's breath, told the defendant to "Let it go" and to go home and "sleep it off." Townes put his hands on the defendant and led him away. Rodriguez went inside and, after calling Townes to express his gratitude, called the police.

Officer Paul Callahan responded to the call and arrived at Acuna's residence to find her and her son visibly upset. Callahan filed an incident report and tried, unsuccessfully, to locate the defendant. The next day, Detective Charles Mercer returned to the neighborhood and interviewed the defendant.

In response to the detective's questions, the defendant asserted that he entered the yard to retrieve the ball only after knocking on the fence and not receiving a response, that Acuna had appeared and yelled at him for not going around to ring the bell, and that he did not swear at or threaten Acuna. Nonetheless, the defendant did admit that he had said that Acuna should

just go back to Mexico? You don't fit here. . . . By the way, do you speak English? Greasy bitch."

"go back to where she came from," but claims to have said it to his neighbor Townes, not directly to Acuna.

1. *Motion for required finding of not guilty.* The defendant argues that the judge erred in denying his motion for a required finding of not guilty on the two counts of assault or battery for the purpose of intimidation. The defendant claims that the Commonwealth presented insufficient evidence that he acted "for the purpose of intimidation."

In reviewing the denial of a motion for directed verdict in a criminal case, we must "consider and determine whether the evidence, in the light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient . . . to permit the jury to infer the existence of the essential elements of the crime charged . . . ." *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979) (citations omitted). The evidence and the inferences permitted to be drawn therefrom must be of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of guilt beyond a reasonable doubt. *Ibid.*

General Laws c. 265, § 39, as inserted by St. 1983, c. 165, § 1, is a so-called "hate crime" statute. It provides that "[w]hoever commits an assault or a battery upon a person . . . for the purpose of intimidation because of said person's race, color, religion, or national origin, shall be punished . . . ."[3] As instructed by the trial judge, the essential elements of the crime are (1) the commission of an assault or battery (2) with the intent to intimidate (3) because of a person's race, color, religion, or national origin. In general, a hate crime is "a crime in which the defendant's conduct was motivated by hatred, bias, or prejudice, based on the actual or perceived race, color, religion, national origin, ethnicity, gender, or sexual orientation of another individual or group of individuals." *Commonwealth* v. *Anderson*, 38 Mass. App. Ct. 707, 709 n.5 (1995). Thus, hate crime laws such as G. L. c. 265, § 39, operate to "enhance the penalty of criminal conduct when it is motivated by racial hatred or bigotry." *Ibid.* It is not the conduct but the underlying motivation that distinguishes the crime.

Here, the defendant was convicted of assaulting the victims for the purpose of intimidation. The intent required by G. L.

[3]General Laws c. 265, § 39, was amended and expanded by St. 1996, c. 163, § 2.

c. 265, § 39, was not only that required to establish the underlying assault, i.e., the intent either to cause a battery or to cause apprehension of immediate bodily harm, but also the intent to intimidate because of the victim's membership in a protected class. The defendant argues that, in order to satisfy the intimidation element, the Commonwealth was required to but did not prove that he had the specific intent to put Acuna and Rodriguez in fear for the purpose of compelling or deterring their conduct.

The defendant urges us, in construing G. L. c. 265, § 39, to employ a definition of "intimidation" that has been used in the context of the Massachusetts Civil Rights Act, G. L. c. 12, § 11H.[4] There, the concept of intimidation has been defined as "putting in fear for the purpose of compelling or deterring conduct." *Planned Parenthood League of Mass., Inc.* v. *Blake*, 417 Mass. 467, 474 (1994). See *Tatro* v. *Kervin*, 41 F.3d 9, 19 (1st Cir. 1994).[5] We decline this invitation.

General Laws c. 12, § 11H, is not a criminal statute. It provides a civil cause of action against those who interfere or attempt to interfere with a person's constitutional rights by threats, intimidation, or coercion. In the context of c. 12, § 11H, intimidation describes the prohibited conduct itself and not any underlying intent. We discern neither reason nor necessity to transplant this definition of intimidation to the hate crime at issue. Webster's Third New International Dictionary 1184 (1993), to which this court often resorts in construing criminal statutes, *Commonwealth* v. *Green*, 27 Mass. App. Ct. 762, 767 n.8 (1989); *Commonwealth* v. *DiPietro*, 33 Mass. App. Ct. 776, 777 (1992); *Commonwealth* v. *Belete*, 37 Mass. App. Ct. 424, 425-426 (1994), defines the verb intimidate as "to make timid or fearful: inspire or affect with fear." *Commonwealth* v. *Potter*, 39 Mass. App. Ct. 924, 926 (1995). *Commonwealth* v. *Gordon*, 44

---

[4] "Whenever any person or persons, . . . interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured." G. L. c. 12, § 11H, inserted by St. 1979, c. 801, § 1.

[5] In *Tatro* v. *Kervin*, *supra*, the trial judge instructed the jury that "[i]ntimidation is scaring [someone] into doing something or refraining from doing something that otherwise they would do."

Mass. App. Ct. 233, 235 (1998). This straightforward definition of intimidation is all that we think is meant in G. L. c. 265, § 39.[6]

The defendant next argues that, if intimidation does not mean to compel or deter the victim's conduct but simply means to put the victims in fear, the intimidation element of the hate crime becomes redundant of the intent requirement of the underlying assault. The intent requirement of the underlying assault, namely, the intent to cause a battery or to cause apprehension of an imminent battery, would not, however, standing alone, be sufficient to satisfy the intimidation element of G. L. c. 265, § 39. The latter is satisfied only by establishing that the defendant had the specific intent to put his victims in fear because of their membership in a protected class, not simply the intent to put them in fear of an imminent battery. There is no redundancy here.

At trial, Acuna and Rodriguez both testified that, throughout the altercation that gave rise to this case, the defendant repeatedly called them "damn Mexicans," and demanded that they "[g]et out of here." Acuna testified that the defendant verbally attacked her, saying that she should go back to her country and that he would kill her and her son. Rodriguez testified that the defendant told him that he was going to beat up Rodriguez and his "bitchy" mother. Both Acuna and Rodriguez also testified that they felt threatened by the defendant's behavior. The Commonwealth presented ample evidence that the defendant assaulted Acuna and Rodriguez with the intent to intimidate them because of their national origin in violation of c. 265, § 39. A rational trier of fact could find that the defendant's repetition of the phrase "damn Mexican," accompanied by his repeated demand that Acuna and Rodriguez "Get out of here," demonstrated a purpose of intimidation because of the victims' national origin. The trial judge did not err in denying the defendant's motion for a required finding of not guilty. See *Commonwealth* v. *Potter*, 39 Mass App. Ct. at 926.

2. *Jury instructions on intent.* The defendant also contends that the trial judge erred in not reading the Model Jury Instruc-

---

[6]Criminal statutes must give clear warning of the particular conduct that is proscribed. *Commonwealth* v. *Belete*, 37 Mass. App. Ct. 424, 425 (1994). To that end, "[w]ords or phrases in a statute are to be given their ordinary meaning . . . unless there [is] a clear indication to the contrary." *Ibid.* (Citations omitted.)

tion on specific intent, as a supplement to the judge's instructions on the crime of assault or battery for the purpose of intimidation. Although the defendant failed to object to this omission at trial, he now claims that it created a substantial risk of a miscarriage of justice.

As a general rule, "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retire[] to consider [their] verdict, specifying the matter to which he objects and the grounds of his objection." Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979). Nonetheless, an error may be of a type and seriousness which should lead to reversal even in the absence of a proper objection. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563 (1967). The test is whether there is a substantial risk of a miscarriage of justice, i.e., whether there is a substantial risk that the outcome of the trial would have been different. *Commonwealth* v. *Amirault*, 424 Mass. 618, 652 (1997).

The judge's instructions to the jury here were brief. The instructions on all six charges against the defendant take up only three pages of trial transcript. Although the judge did not dwell on the subtleties of each element of the crimes charged, he did correctly explain all the necessary elements. The judge explained to the jury, for example, that one of the three elements of assault or battery for the purpose of intimidation is that the defendant acted "for the purpose of intimidation." He explained that one of the three elements of threatening another person with a crime is that the defendant communicated "an intent to injure . . . now or in the future," and, with respect to the assault charges, the judge explained to the jury that they must find "that the defendant intended to commit a battery" or that the defendant "intended to put Maria Acuna or Israel Rodriguez in fear of an imminent battery." It is not necessary for a judge "to refer to the defendant's *specific* intent to do something as an element of a crime. A reference to intent is sufficient." *Commonwealth* v. *Sires*, 413 Mass. 292, 301 n.8 (1992) (emphasis in original). See *Commonwealth* v. *Gunter*, 427 Mass. 259, 268-269 (1998). Although an instruction on specific intent very well might have given the jury better guidance in their deliberations, its omission did not create a substantial risk of a miscarriage of justice.

Although the defendant did not request an intoxication instruction at trial, the defendant now argues that the trial judge

erred in not instructing the jury on voluntary intoxication where specific intent was at issue. As to intoxication, however, the evidence presented at trial was sparse. Townes, the defendant's neighbor, testified that as he approached the defendant he noticed a smell of alcohol. Yet, none of the witnesses testified that the defendant either was observed drinking alcohol or appeared to be impaired to any degree by alcohol. Nor did any other witness corroborate the observations of Townes. A voluntary intoxication instruction is not required "where the evidence does not suggest a condition of 'debilitating intoxication' that could support a reasonable doubt as to whether [the] defendant was capable of forming the requisite criminal intent." *Commonwealth* v. *James*, 424 Mass. 770, 789 (1997). There was no substantial risk of a miscarriage of justice in the trial judge's failure to instruct the jury on voluntary intoxication.

3. *Ineffective assistance of counsel.* The defendant's final contention is that the trial judge improperly denied his motion for new trial on the ground of ineffective assistance of counsel where his trial counsel failed to introduce evidence that his niece, whom he was babysitting at the time of the incident, was partially of Puerto Rican descent. The defendant believes that this information would have negated the discriminatory animus element of his conviction under G. L. c. 265, § 39, and, consequently, if introduced at trial, would have led the jury to a different result.

"A judge's decision to deny a motion for a new trial . . . will not be disturbed unless a review of the defendant's case shows that the decision, if not reversed, will result in 'manifest injustice.' " *Commonwealth* v. *Watson*, 409 Mass. 110, 114 (1991), citing Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979). Where, as here, the motion judge was also the trial judge, the decision of the motion judge is entitled to special deference. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 32-33 (1923). Moreover, where a claim of ineffective assistance of counsel is the basis for the defendant's motion for new trial, appellate courts accord substantial deference to the trial judge's favorable evaluation of a trial counsel's performance. *Commonwealth* v. *DeVincent*, 421 Mass. 64, 69 (1995).

In order to demonstrate ineffective assistance of counsel, the defendant must show that the serious incompetency, inefficiency, or inattention of counsel, i.e., behavior of counsel falling measurably below that which might be expected from an

ordinary fallible lawyer, likely deprived him of an otherwise available, substantial ground of defense. *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Thus, in order to have prevailed on his motion for new trial, the defendant would have to have shown that counsel's decision not to introduce evidence of his niece's ethnicity was "manifestly unreasonable." *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978).

The defendant contends that his outburst at Acuna and Rodriguez was motivated by his anger at being called a trespasser and was not motivated by any anti-Mexican sentiment. The defendant believes that the fact that his niece is of Puerto Rican descent demonstrates that he lacks any anti-Hispanic bias or prejudice. The uncontroverted evidence at trial, however, was that the defendant was shouting specifically anti-Mexican slurs at Acuna and Rodriguez, not that he expressed any more generalized anti-Hispanic animus. Moreover, the evidence submitted in conjunction with the defendant's motion for new trial established merely that the defendant's niece was of Puerto Rican descent, not that the defendant thought favorably of Puerto Ricans or Hispanics in general.[7] Contrast *Commonwealth* v. *Licata*, 412 Mass. 654, 661 (1992). The defendant has not demonstrated that counsel's failure to introduce evidence at trial of the niece's ethnicity was manifestly unreasonable or that the evidence, if introduced at trial, would have led the jury to a different result. The trial judge did not err in denying the defendant's motion for new trial.

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*

---

[7]The trial judge found that the fact that the defendant has a Hispanic niece was not necessarily relevant to whether the victims in the instant case were subjected to racial invective and actions on the part of the defendant.